# CHARLESTON.

DEARING *et al. v.* SELVEY, *Executor.*

Submitted January 12, 1901.   Decided November 9, 1901.

1. SETTLEMENT—*Exparte—Prima Facie—Burden of Proof.*
   An *ex parte* settlement, upon the face of which no error is apparent, is *prima facie* correct, and the burden of proof is on the plaintiff in attacking any item in such settlement to show that it is improper.   (p. 9).

2. WILLS—*Construction—Devisee's Right.*
   Where a will bequeaths and devises all of the testator's property, both real and personal, after the death of his widow, to

his children, and at the time of the making of the will he owned certain real estate, but, before his death, acquired additional land, the after acquired real estate passes to the devisees with the other. (p. 11).

3. WILLS—*Executor's Powers—Sale.*

If in such case the testator directs the executor of his will to sell the real estate owned by him at the time he made the will, describing it as "My said home farm," and the disposition of his estate is such that the purposes disclosed by the will cannot be effectuated without a sale of all the real estate of the testator, a power of sale as to such after acquired property is implied, and should be exercised by the executor. (p. 15).

4. WILLS—*Construction—Trust Vested.*

Where a will provides that the executor shall not pay to a devisee her part of the testator's estate in money but shall invest it in land for the benefit of her and her children, and cause a deed for the same to be so made as to vest in her a life estate and the remainder in fee in her children, such provision creates a trust in favor of such devisee and her children, which it is the duty of the executor to perform. (p. 16).

5. DEVISEE'S WAIVER—*Estoppel—Trust Construed.*

Such devisee may waive the execution of such trust, on the part of the executor, by accepting from him a sum of money, equal to, or in excess of, the value of her prospective life estate, and, having done so, she is estopped from requiring the execution of the trust in accordance with the terms of the will. (p. 19).

6. BILL—*Fiduciary Settlement—Surcharging.*

One who is not entitled to any relief against an executor or administrator cannot maintain a bill to surcharge and falsify the *ex parte* settlement of such fiduciary. (p. 19).

Appeal from Circuit Court, Taylor County.

Bill by Melissa Dearing and others against Thomas T. Selvey. Decree for plaintiffs, and defendant appeals.

*Reversed.*

G. H. A. KUNST, for appellant.

IRA E. ROBINSON, for appellees.

POFFENBARGER, JUDGE:

This is a suit in equity instituted in the circuit court of Taylor County in December, 1895, by Melissa Dearing and John C. Dearing, her husband, against Thomas T. Selvey, executor of the will of James Selvey, deceased, and the five children of the plain-

tiffs, all of whom are infants, to surcharge and falsify the settlements made by the executor and to require him to pay over certain sums of money which had come into his hands by virtue of the will and in his capacity as executor, as is contended by the plaintiffs, and in part by virtue of the will and in part by virtue of certain contracts made by the plaintiffs with the executor, as claimed by the executor.

The testator died at some time between the years 1881 and 1888. His will is dated May 18, 1881, and was probated on the 23rd day of May, 1888. The principle provisions of the will are as follows:

2—"I will and bequeath my home farm of about one hundred and fifty-two and a half acres to my wife, Elizabeth, during her natural life, and I also will and bequeath to my said wife, all my household and kitchen furniture and two cows during her natural life."

3—"I will and bequeath the whole residue of my estate both real and personal, to my nine children, to be equally divided between them, except only that from the part of my daughter Virginia shall be deducted a note of three hundred dollars with its interest, from the date of the note till paid, that her husband Arthur Sinclair owes me for a house and lot in Claysville; and from the part of my daughter Matilda Sparks shall be deducted the amount of her note of four hundred and twenty-five dollars, with its interest, which I hold on her and the amount of her husband, Joseph Sparks two notes, one of fifty-five dollars and the other or fifteen dollars, and their interest, which I hold on him; and from the part of my daughter, Rebecca Boots, shall be deducted the amount of the note of one hundred and fifty dollars, and its interest, I hold on her husband, Adam Boots, and from the part of my daughter, Melissa Dearing, shall be deducted the amount of a note of forty-five dollars, and its interest I hold on her husband Calvin Dearing. The names of the said nine children are Samuel Selvey, Richard Selvey, Thomas T. Selvey, Dolly Yates, wife of James Yates; Rebecca Boots, wife of Adam Boots; Melissa Dearing, wife of Calvin Dearing; Matilda Sparks, wife of Joseph Sparks, Elizabeth Selvey, and Virginia Sinclair, wife of Arthur Sinclair."

4—"I will and direct that after the death of my said wife, my said home farm of about one hundred and fifty-two and one-

half acres be sold by my executor hereinafter named, and that the proceeds of the sale be equally divided between my said nine children as aforesaid except the aforesaid deductions from the parts aforesaid. The executor may sell the land by private, or public sale, and may sell for cash in hand, or on reasonable credit. Melissa Dearing's, Virginia Sinclair's, and Matilda Sparks' part of my estate shall not be paid to them by my executor, but the executor shall invest them in land for the benefit of them and their children, the land shall be suitable for homes for them and the children and the deeds for the saids shall vest in them an estate for their lives, and the remainder to the children."

Exclusive of the provisions made for the widow out of the personal property the executor realized the sum of two hundred and eighty dollars and twelve cents from the personal estate of the testator. On the second day of March, 1891, he sold the one hundred and fifty-two and one-half acre tract of land, the home place, for three thousand and thirty dollars, of which one thousand and ten dollars was paid in cash and the residue in two equal installments, one and two years afterwards, respectively, making the total amount received therefrom, principal and interest, three thousand two hundred and eleven dollars and eighty cents. At the time of his death the testator owned three other tracts of land, one of which was one acre of coal. This one acre was sold by Thomas G. Yates, special commissioner, under a decree of the circuit court of Taylor County for the sum of eighty dollars, and after deducting the costs, and expenses of sale, amounting to sixty dollars and ninety-five cents, a balance of nineteen dollars and five cents remained in his hands. This is stated in the bill. The executor denies that any part of this money ever came into his hands. He was one of the devisees of the will, and in his answer says this one acre was sold in a suit, brought by him in his individual capacity and as devisees under the will, for the partition thereof, and upon the ascertainment by the court that the land was not susceptible of partition. He did sell the other two tracts, one of them on the second day of April, 1890, for six hundred and eighty-two dollars and eighty-four cents, for part cash and the residue on credit and received therefor in all seven hundred and thirteen dollars and nineteen cents. He sold the other on the 16th day of September, 1890, for one thousand five hundred dollars, part cash and the residue on credit, and re-

ceived therefor in the aggregate one thousand five hundred and seventy-five dollars. After the death of the widow he received additional money from the personal estate, amounting to one hundred and nine dollars and fifteen cents. The executor charged himself in his settlement with the following collection of notes: T. T. Selvey, two hundred and sixteen dollars and seventy-six cents; T. T. Selvey, eighty dollars and eighty-six cents; Dolly Yates, two hundred and forty-six dollars and forty-five cents; A. D. Sinclair, six hundred and thirteen dollars and eighty-one cents; Betty Selvey, one hundred and sixty-one dollars and thirty-seven cents; Melissa Dearing, ninety-one dollars and eighty cents; Rebecca Boots, two hundred and fifty-two dollars and eight cents. It will be noticed that the will directs a part of these notes to be deducted respectively from the shares of the persons owing them. Richard Selvey owed eight hundred and twenty-one dollars and ninety-two cents, with which the executor did not charge himself for the reason that these notes were barred by the statute of limitation at the time they came into his hands. Matilda Sparks and her husband owed eight hundred and seventy dollars and ninety-five cents, an amount considerably in excess of her entire share in the estate of the testator. Because of her indebtedness Mrs. Sparks was excluded from any share in the estate, the will having directed the debts of herself and her husband to be deducted from her share. No such provision was inserted as to Richard Selvey and he was permitted to share in the distribution.

The executor made a partial settlement on the 26th day of June, 1891, another on the 4th day of April, 1892, and his final settlement on the 4th day of March, 1893. In this last settlement the two former partial settlements were wholly ignored and a settlement of the entire estate was made as if no former settlement had ever been made. In this final settlement, the commissioner credits himself with fourteen dollars, the commission on the two hundred and eighty dollars and twelve cents, which first came into his hands as the proceeds of the personal property sold. The bill alleges that this was an improper credit, for the reason that the executor had failed to lay his accounts before a commissioner for settlement within eighteen months from the time of his qualification as such executor as is required by law. The second item attacked in the bill is a credit in the

settlement of seventy-four dollars and ninety cents, paid by the executor as costs in the chancery suit instituted in 1899, by the executor against the devisees of the testator to sell the two tracts of land, and the one acre of coal, owned by the testator at the time of his death, and not specifically mentioned in the will, which suit it is alleged was dismissed upon the motion of the plaintiff at the April term, 1891. It is alleged that this suit was improperly brought for the reason that the personal property was amply sufficient to pay all of the debts of the testator. A copy of a decree entered in that cause on the 19th day of November, 1899, directing the debts mentioned in the bill and the costs of that suit to be paid out of the personal estate in the hands of the executor, and decreeing a sale of all the real estate because it was not susceptible of partition in kind, is exhibited with the bill in this case. It appears from the bill and answer that this decree of sale was never executed and that the land was otherwise disposed of. So the suit must have been dismissed, but the executor, feeling himself bound by this decree and warranted by it in so doing, paid the cost out of the personal estate and credited himself with it in his settlement. The next item attacked is one hundred and four dollars, the amount charged by the commissioner for making the settlements, and paid by the executor. It is objected to as being unreasonable, unlawful and exorbitant.

The fourth objection requires considerable explanation. In the *ex parte* settlement, the commissioner found that the share of Melissa Dearing in the personal estate and the proceeds of the one hundred and fifty-two and one-half acres of land was four hundred and thirty dollars and four and seven-eighths cents. He found her interest in the two tracts of land not mentioned in the will but sold by him, to be two hundred and sixtty-six dollars and nine and five-eighths cents, making a total of six hundred and ninety-six dollars and fourteen and one-half cents. Deducting from that, the amount of her note ninety-one dollars and eighty cents, there remained six hundred and four dollars and thirty-four and one-half cents. Recurring now to the will it will be seen that the fourth clause of that instrument directs the executor to sell the one hundred and fifty-two and one-half acres and divide the proceeds equally among his nine children, subject to the deductions to be made by the third clause, and to the

further provision that "Melissa Dearing's, Virginia Sinclair's and Matilda Sparks' parts of my estate shall not be paid to them by my executor, but the executor shall invest them in land for the benefit of them and their children." This requirement of the will was not complied with. The defendant alleges in his answer that an honest effort was made to find a suitable tract of land for the purpose, that he spent his own money in so doing and took the husband of Mrs. Dearing with him, that all of these efforts were of no avail, that then Mrs. Dearing demanded the payment of the four hundred and thirty dollars and four cents which he refused to pay, that she then proposed in writing, duly signed and acknowledged by her, to take the value of her life estate in money, that after considering the matter and taking the advice of his counsel he decided to settle with her on that basis and did so, that the writing aforesaid was an agreement to take a certain sum of money as the value of her life estate and a receipt for the payment thereof, and that said writing was left with A. Armstrong, his attorney, and the same has since been lost. These allegations are supported by the deposition of the defendant as well as by the deposition of Armstrong, who says he remembers having so advised the defendant and also that such paper was left in his office and that he has since been unable to find it, but he does not remember its contents. No evidence appears in the record contradicting this testimony. No deposition of either of the plaintiffs is found in the record and the presumption is that they did not testify. The cause was referred to a commissioner and he found and reported that the defendant had paid to Mrs. Dearing the sum of eighty-four dollars and sixty-seven cents, the supposed value of her life estate, in the sum of four hundred and thirty-six dollars and sixty-one and one-eighth cents, the amount found by him as the share of Mrs. Dearing and her children in the estate, exclusive of the two after acquired tracts of land. He further reported that her interest in the two tracts of land amounted to two hundred and seventy dollars and forty-seven and three-eighths cents and that the executor had paid her the remainder of this sum after deducting the amount of her notes ninety-one dollars and eighty cents, viz: one hundred and seventy-eight dollars and sixty-seven and three eighths cents. Now, the bill alleges that the *ex parte* settlement of the executor is wrong "because the said executor

embodied in his settlement the sum, five hundred and eight dollars and forty-six cents, the distributive share of the said Melissa Dearing and children, proceeds of the sale of the home farm mentioned in the said will provides, that the distributive share, of the sale of the said land shall not be paid to her, but shall be invested in land for her and her said children, and the deed to vest in her an estate for life and the remainder to her children." The fifth objection to the *ex parte* settlement is to the same effect and is as follows: "The said account is wrong because the commissioner added the sum realized from the sale of the home farm to the sum found by him to be due the said Melissa Dearing from the sale of the land not mentioned in the will, and deducted therefrom the amount of her notes, ninety-one dollars and eighty cents, for the reason the amount of said notes should have been deducted from her share in the proceeds of the sale in the land not mentioned in the will leaving her distributive share in the home farm, five hundred and eight dollars and forty-six cents, to be put into land."

T. T. Selvey contends the two tracts of land not mentioned in the will were not sold by him in the capacity of executor. He alleges in his answer that he sold them under and by virtue of two instruments of writing, signed by all of the devisees, and the sales were consummated and affected by their joining in the deeds by which the lands were conveyed to the purchasers. He also alleges that these contracts provided that he should have his commission on the purchase-money and all his costs and expenses in making the sale and that the two agreements have been misplaced and cannot be found. In his deposition he swears to the truth of all the allegations in his answer, not specifically as to all of them, but generally, and then specifically as to the settlement made with Mrs. Dearing on account of her life estate. The contention seems to be not as to how the sales of these two tracts were made, but as to whether Thomas T. Selvey received the proceeds thereof in his executorial or individual capacity. That question turns upon the construction to be given to the will and not upon manner in which the sales were made. The bill is not supported by any proof, in its allegation respecting the manner in which the sales were made. These allegations are denied in the answer and it seems that under these circumstances the proof offered in support of the answer

is sufficient on this point, and that it is safe to proceed upon the view that the sale was made in the manner set forth in the answer.

The *ex parte* settlement of the executor showed a balance of three thousand four hundred and forty dollars and thirty-nine cents on account of the estate, exclusive of these two tracts of land, for distribution among the devisees, subject to the deduction from their respective shares of the amount due from them to the estate. The commissioner to whom this cause was referred found the balance on account of this part of the estate to be three thousand four hundred and ninety-two dollars and eighty-nine cents, making a difference of fifty-two dollars and fifty cents, falsifying the *ex parte* settlement to that extent on that account. This difference was made by rejecting part of the amount paid by the executor for making the *ex parte* settlement. The whole amount of that bill was one hundred and four dollars of which fifty-two dollars and fifty cents was charged for the first two settlements and fifty-one dollars and fifty cents for the last settlement. As to the other part of the estate the balance shown by the *ex parte* settlement was two thousand one hundred and twenty-three dollars and seventy-seven cents, to be distributed among the parties interested. The commissioner in this cause found that balance to be two thousand one hundred and sixty-three dollars and seventy-nine cents, making a difference of fifty-five dollars and two cents. He says the item of credit rejected is the expenses charged by Selvey as having been incurred in making the sales of the two tracts of land. The amount thus charged for one of these sales is twenty dollars, and for the other twenty-five dollars, making a total of forty-five dollars, thus indicating a clerical mistake of about ten dollars. While the *ex parte* settlement shows six hundred and ninety-six dollars and fourteen and one-half cents due Melissa Dearing and her children from the entire estate, subject to deduction for the amount of her notes, the report of the commissioner in this cause shows the amount to be seven hundred and seven dollars and eight and one-half cents, subject to the like deduction.

On April 20, 1898, a final decree was made and entered in the cause requiring Thomas T. Selvey, executor, to pay into court or to the general receiver of the court within thirty days from the rising of the court, the sum of six hundred and fifteen

dollars and twenty-eight and one-half cents, to the end that it may be invested in land under the order of the court pursuant to the desire, direction and devise of the testator expressed in the will, for the benefit of Melissa Dearing and her children.  A judge of this Court granted an appeal from and *supersedeas* to, this decree, March 12, 1900.

The plaintiff excepted to so much of the report of the commissioner as found that the executor had paid to Melissa Dearing the sum of one hundred and seventy-eight dollars and sixty-seven and three-fourth cents, and the sum of eighty-four dollars and eighty-six cents or any sum whatever.  But there is evidence of the payment of these sums and it is uncontradicted.  The deposition of Selvey is excepted to for want of notice, but the notice, with return of service thereof, is in the record.  No exception to the action of the commissioner in allowing the item of seventy-four dollars and ninety cents, and the item of fourteen dollars is made.  Nor is exception taken to his failure to charge the executor with anything on account of the one acre of coal.  The defendant filed a number of exceptions to the report of the commissioner, principal among which are that the evidence does not sustain the report in surcharging and falsifying the *ex parte* settlement, that it was error to charge him as executor with the proceeds of the two tracts of land not mentioned in the will, and that it was wrong not to allow the executor credit for the one hundred and seventy-eight dollars and sixty-seven and three-eighths cents and the eighty-four dollars and sixty-seven cents, which the commissioner found that he had actually paid to Melissa Dearing.  These are the only exceptions filed by the defendant which it is deemed necessary to notice.  The report being unexcepted to as to the items of seventy-four dollars and ninety cents and fourteen dollars and no brief having been filed by the appellees, the finding of the commissioner and the decree of the court, confirming his report as to these items, may be regarded as being acquiesced in by the appellees.  If error might have been assigned as to these items. it has been waived.  For what reason the commissioner struck out the item of fifty-two dollars and fifty-cents does not appear. The report is accompanied by no evidence on this point.  While the amount seems to be large for the amount of work done by the commissioner, it must be remembered that his compensation

is fixed by law. See sections 5 and 6, chapter 157, Code. It depends upon the number of hours he was actuaully and necessarily employed in the work. How long he was employed does not appear. In attacking this item it was incumbent upon the plaintiffs to prove that it was an improper and unwarranted charge against the estate. Upon that point they appear not to have produced any evidence at all. Hence, it was improper in the commissioner to strike it out of the *ex parte* settlement, for that settlement is *prima facie* correct, and the burden was upon the plaintiffs to show that it is wrong. Code, chapter 87, section 32. *Seabright* v. *Seabright,* 28 W. Va. 412.

The fourth clause of the will, under the rules applicable to the construction of wills, clearly gives the children an interest in that portion of the estate, which, in the absence of the provision as to them, contained in said fourth clause,. would go to their mother absolutely. The third clause gives the residue of the estate, both real and personal, to the nine children of the testator, to be equally divided among them. Hence, Mrs. Dearing's part of the estate, as used in the fourth clause, read in the light of the interest given her in the third clause, means the one-ninth of the entire estate of the testator, both real and personal. But said fourth clause expressly provides that she is not to have this portion of the estate absolutely but only in a qualified way. It directs that her part of the estate, all of that one-ninth of the esate, shall be invested by the executor in land, and that he shall cause a deed to be made conveying such land to her, to have and hold for and during her natural life, remainder in fee to her children. When the language of a testator is plain and his meaning clear, the courts have nothing to do but to carry out the will of the testator, if not inconsistent with some rule of law. *Whelan* v. *Reilly,* 5 W. Va. 386 ; *Couch* v. *Eastham,* 29 W. Va. 784. The latter case further holds that in the interpretation of a will, the true enquiry is, not what the testator meant to express, but what do the words used express. There is no uncertainty or amibguity in this will as to the subjects or objects of the bounty which it bestows. No construction as to these features is necessary or can be resorted to. Nothing can be done except to ascertain what relief, if any, the plaintiff is entitled to upon the allegations of her bill, read in the light of these plain provisions of the will and other provisions of that instrument now to be considered.

At the time the will was made the executor owned but one tract of land. Afterward he acquired three more. The provisions of the will just considered apply to this after acquired property and it passes to the beneficiaries of that will in the same way as the property specifically mentioned in the will, unless the failure of the testator to direct his executor to sell the after acquired property as well as the other, prevent such operation and effect. This question is deferred for later consideration. At common law, after acquired real estate did not pass under the will. The utmost effect that a will could have over such property was to form the basis upon which a conveyance might be called for in pursuance of a binding contract entered into before the will was made. 29 Am. & Eng. Ency. Law 257. All that has been changed here by statute. Section 10, chapter 77 of the Code provides that "A will shall be construed, with reference to the real and personal estate comprised in it, to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear by the will." So this after acquired land passes not by descent but by the will.

But unless the executor had authority to sell it, he is not chargeable in his executorial capacity with its proceeds. Therefore, the most important question in the case, is whether the power of sale vested in the executor extended to, and included, this after acquired property. By virtue of his mere office of executor, the personal representative takes no interest in, or control over, real estate. Such interest or control must be vested or conferred by some provision of the will or it does not exist. 7 Am. & Eng. Ency. Law 270. The doctrine relating to this subject is given in the law books under the heads of powers and trusts. The will here expressly confers upon the executor power of sale as to the one hundred and fifty-two and one-half acres, owned by the testator at the time he made the will, but it is silent as to any power of sale over the after acquired property. Such powers are to be construed in the light of the purpose which the agent or depositary is appointed to accomplish, and the intent of the donor as to the mode of its accomplishment. 18 Am. & Eng. Ency. Law 895. A power of sale given in a will should receive a liberal construction in order to effect the true purpose and intent of the will. *Idem* 938; 3 Redfield on Wills,

137. The power of sale need not be conferred in express words. If, from all the provisions of that instrument, it is clear that the intent was to clothe the donee with the power of disposition, such intent will be effectuated. 18 Am. & Eng. Ency. Law 901. Where a testator imposes on his executor trusts or duties which require for their execution or performance an estate in his hands or a power of sale, the executor will take, by implication, such estate or power. *Lindley* v. *Oreilly*, 50 N. J. L., 636. Here it is perfectly clear that, without the power of sale as to all of the real estate of the testator, the executor could never convert it into money and take the one-ninth of it and invest it for the benefit of Mrs. Dearing and her children as directed by the will. Without such power, the clearly expressed intention of the testator could not be effectuated. Such intention would not be carried out by permitting a portion of the real estate to pass to them, to be held by Mrs. Dearing for life and by the children in fee, subject to her life estate, while another portion is converted into money and invested in land as directed by the will. It was intended that this interest should be collected into one fund and invested for the purpose of providing a home for them. The amount of this portion seems to have been understood by the testator, as in fact it was, to be small. After the executor had gotten it all together, he and the beneficiaries of it found it to be insufficient for the accomplishment of that purpose. Without extending the power of sale to the after acquired property, the intention of the testator cannot be carried out. The rule under which such power will be implied, when necessary to effectuate the purpose clearly expressed in the will, is well settled. In New York, it has been held that, under the power to sell all the real estate of the testator, the executors are not authorized to sell any other lands than those which the testator owned at the time of the execution of the will. *Green* v. *Dikeman*, 18 Barb. (N. Y.) 535. That was a case, however, in which such sale of after acquired land was not necessary to carry out the provisions of the will or to execute a trust imposed upon the executor by the terms of the will, and the will there construed was made before the New York Statute, making wills speak as of the deaths of testators, took effect. The reason for the creation of this power by implication is not changed by the fact that part of the land was acquired after the execution of the will, and as the

reason for the rule remains, the rule itself must be still applied. Otherwise the purpose expressed by the testator must fail.

The power thus given to the executor is in the nature of a trust. The will made it his duty, after converting the property into money, to invest a portion of it for the benefit of Mrs. Dearing and her children, so as to give the children the remainder in fee in the land, so directed to be purchased, after the life estate therein to Mrs. Dearing. No discretion as to this requirement is vested in the executor. By a refusal to execute this provision of the will, he could not defeat the interests therein provided for the beneficiaries. The power of sale thereby created is, in equity, imperative and a court of equity will enforce it. Perry on Trusts, ss. 249, 252; 2 Sto. Eq. Jur. s. 1061; *Faulkner* v. *Davis,* 18 Grat. 651. This provision, however, does not mean that the fund thus coming into the hands of the executor shall be held in trust by him for the benefit of these beneficiaries, and the will creates no trust in that sense. He was to retain the money no longer than a sufficient time to enable him to make the investment. The making of the investment of the money is a trust imposed upon him by the will and he is to that extent a trustee. Upon his compliance with that requirement, had he done so, his control over the fund would have ended. The will does not require him to hold in trust the land so purchased, for it expressly provides that the deed shall vest in Mrs. Dearing a life estate and in her children, a remainder in fee. Had he executed this trust and thus vested a life estate in Mrs. Dearing, she could have disposed of that life estate at any time thereafter.

Having laid down these controlling propositions, it remains now to ascertain whether Mrs. Dearing is entitled to the relief she asks in her bill. Unless she is precluded by having accepted from the executor the sum of two hundred and sixty-three dollars and thirty-four and three-eighths cents, as, and for her interest in the fund in question, it is clear that she would be entitled to have the fund invested in land as required by the will and according to the prayer of her bill. That she did accept this sum is a matter of fact, found by the commissioner in his report. He found that she accepted eighty-four dollars and sixty-seven cents as a gross sum in lieu of her prospective life estate in the land, which the executor had been directed to purchase, and one hundred and seventy-eight dollars and sixty-

seven and three-eighths cents, the entire one-eighth of the proceeds of the sale of the after acquired land, after deducting the amount of her notes and the costs and expenses. "Where questions purely of fact are referred to a commissioner, his findings will be given great weight, though not as conclusive as the verdict of a jury, and should be sustained unless plainly not warranted by any reasonable view of the evidence. This rule operates with peculiar force in an appellate court when the findings of a commissioner have been approved by the courts below." *Reger* v. *Oneal,* 33 W. Va. 159; *McClure* v. *Weight,* 18 W. Va. 507; *Holl* v. *Taylor,* 43 W. Va. 160; *Cann* v. *Cann,* 45 W. Va. 563. These findings of the commissioner are based upon some evidence in support of them, while there is no evidence to the contrary. They must, therefore, be accepted without regard to the rule above referred to. The whole amount thus received by her is far in excess of any gross sum which she might be entitled to claim in lieu of such prospective life estate, found by calcuulation under the annuity table found in section 17 of chapter 65 of the Code.

Could Mrs. Dearing elect to take money instead of the freehold directed by the will to be provided for her? She having made such election, demanded such gross sum, was the executor warranted in settling with her on that basis? The statute makes no provision for such election. This settlement clearly defeated one of the purposes of the testator. That purpose was to provide a suitable home for the plaintiff and her children. Did the testator attempt to forestall and prevent such action on her part? Certainly not. Did he not leave the matter to her election by permitting the life estate to pass into her hands absolutely and beyond control? Undoubtedly. Within an hour after the creation of such life estate for her, it would have been in her power to sell and dispose of it, and thus defeat that purpose. So, it amounts to this, a mere direction to provide such home for her, if she desired it. The statute makes no provision for such election, except in cases of dower or curtesy. The transaction by which it was made was, therefore, a matter of contract between her and the executor as to the eighty-four dollars and sixty-seven cents, each rightly understanding the meaning of the will. As to the other sum it was a matter of contract between them,

but they were both clearly ignorant of their rights and duties under the will.

However the case may stand on this question of her right to elect, the fact remains that it would be inequitable and unjust to allow Mrs. Dearing to demand a second payment to her by the executor or the equivalent thereof. Before she can demand a compliance on his part with the last provision of the fourth clause of the will, equity requires that she return to the executor the money she has received from him. Being thus in a situation which denys her any relief against the executor she cannot maintain a bill to surcharge and falsify his accounts, even though such a bill might be sustainable in a proper suit brought for that purpose. If all the items of alleged improper credit, attacked in her bill, were shown to be improper and stricken out, and the *ex parte* settlement of the executor surcharged to that extent, the amount she has received from that fund would still be in excess of the amount of money to which she would be entitled, if it could have been paid to her in money.

By waiver and estoppel, the *cestui que trust* may forfeit his right to the enforcement of the trust in court. The subsequent ratification thereof may estop him in a court of equity from demanding relief against his trustee. 22 Am & Eng Ency. Law 269. · The general principles of the law of waiver and estoppel apply to the administration of trusts and control both beneficiary and trustee. The *cestui que trust's* ratification of the trustee's unauthorized act, or his acquiescence therein, will operate as an estoppel only where he was aware of all the material facts of the transaction which, in any way, affect the ratification. 27 Am. & Eng. Ency. Law 267, 270. "There is no illegality in a *cestui que trust* authorizing an act which otherwise would be a breach of trust toward himself, or in his releasing, or agreeing to hold harmless, his trustee for such an act after it is done." *Pope* v. *Farnsworth,* 146 Mass. 339. No imposition was wrought upon Mrs. Dearing by the executor. She was fully informed as to the facts relating to her interests. She released the executor from the strict performance of his duties, and waived the execution of his trust. Under a mistake as to the law on the part of both of them, he paid her more money on account of the after acquired land than she was entitled to or could have made out of the investment of it, had the trust been fully executed. He paid her

on account of the other fund all she was equitably entitled to. He derived no personal benefit from either of these transactions, and there is not a suspicion of fraud resting upon him or alleged against him. What he did in these respects was done with the full consent and co-operation of these plaintiffs, and, under the principles here adverted to, they cannot require the executor to pay this money over again for their benefit.

The conclusion, therefore, is that the plaintiffs are not entitled to the relief asked for in their bill, that there is error in the decree of the circuit court, that that decree must be reversed and that the bill must be dismissed at the cost of the plaintiffs, but without prejudice to the right of any of the children of Mrs. Dearing to enforce against the executor, in any proper proceeding, any right or interest to which they may be entitled in respect to said estate, by reason of the provisions of said will.

*Reversed.*