SAYERS F. HARMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

C. HENRY HARMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 1145, 1146.    Promulgated November 24, 1944.

*George E. H. Goodner, Esq.,* and *Scott P. Crampton, Esq.,* for the petitioners.

*Lloyd W. Creason, Esq.,* for the respondent.

336

338

**OPINION.**

DISNEY, *Judge*: The first issue presented for decision is the right of each of the petitioners to deduct from their income as increased by the Commissioner the amount of a loss incurred upon the sale of certain

coal lands which they inherited for life under the will of their father. This issue suggests the following questions:

1. Was the loss that of the individual taxpayers or that of the estate of W. F. Harman?

2. What is the amount of the loss?

3. Is the loss capital or ordinary?

In seeking the solution to the first problem we must start with the premise, as enunciated by the Supreme Court in the case of *Helvering* v. *Stuart*, 317 U. S. 154, that "Grantees under deeds, wills and trusts, alike, take according to the rule of the state law." The coal lands here in question being located in West Virginia, the law of that state must control our decision as to whether these coal lands were part of the estate of W. F. Harman, or belonged to petitioners. In the case of *Tyler* v. *Reynolds*, 121 W. Va. 475; 7 S. E. (2d) 22 (1939) the Supreme Court of Appeals of West Virginia stated that, "The devisees, under the will of F. M. Reynolds, *became vested with the legal title to parcels of real estate* devised to them respectively, but subject to the provisions of Code, 44-8-3, which made these properties assets for the payment of the debts of the testator; and subject also to the provision of the will which authorized the executors to sell and convey these properties. *Having the legal title*, they had the right to redeem them from the debts of the testator * * *. In this cause the devisees * * * were parties to this suit as individuals, and in their capacity as such had the right to appeal from the decree which directed the sale of property, *the legal title to which was vested in them under the will.* * * *"" (Italics supplied.) Reference is made to "Code, 44-8-3" in the material quoted above. This provision is the same as section 3 of chapter 86 of the 1923 edition of the West Virginia Code, which provides as follows:

§ 3. Liability of estate for debts.—All real estate of any person who may hereafter die, as to which he may die intested, or which, though he die intestate [*sic*], shall not by his will be charged with or devised subject to the payment of his debts, or which may remain after satisfying the debts with which it may be so charged, or subject to which it may be so devised, shall be assets for the payment of the decedent's debts and all lawful demands against his estate, in the order in which the personal estate of a decedent is directed to be applied.

In the instant proceedings, the assets of the estate of W. F. Harman that consisted of personal property were more than sufficient to pay the decedent's debts and other lawful demands against the estate of W. F. Harman. It is also to be noted that the provisions of the will of W. F. Harman expressly except the coal lands devised by the fourteenth clause from the property as to which the executors are given a power of sale in the twentieth clause. The real estate herein involved was, therefore, under the law of West Virginia, not subject under the facts to the payment of the debts of decedent. *Dearing* v.

*Selvey*, 50 W. Va. 4; 40 S. E. 478 (cited in 24 C. J. § 594); *Reid* v. *Stuart*, 13 W. Va. 338 (cited in 69 C. J. § 2459). Cf. also *George* v. *Brown*, 84 W. Va. 359; 99 S. E. 509; *Arbenz* v. *Arbenz*, 114 W. Va. 804; 173 S. E. 881; *Harris* v. *Eskridge* (W. Va. 1942), 20 S. E. (2d) 465.

We are, therefore, of the opinion that legal title to a life estate in the coal lands devised by the fourteenth clause of the will of W. F. Harman passed under that will to the taxpayers. That life interest was sold by the petitioners, by deed.

In *Amy H. DuPuy*, 32 B. T. A. 969, we considered a situation very similar to that herein involved; for there the petitioner, as here, was bequeathed a life estate in real estate as well as personalty, and, as did the will in this case, in effect, the will therein provided that the "rents, issues, income and profits thereof accruing during her life" should be "her absolute property" (the language in the Harman will being that the "rents, issues, profits, royalties and dividends * * * are given them absolutely * * *"). We held that gains realized from the sale of certain securities were taxable to the petitioner. The executors sold the securities. As in the instant case, no trust was set up. Cf. *William R. Todd*, 44 B. T. A. 776 (784), where petitioner was bequeathed the life estate in personal property, including securities, with right to income during life, and where we held under the law of Ohio that gains from the sale of the securities were not properly included in the petitioner's gross income. We there distinguished *Amy H. DuPuy, supra*, on the ground that in that case the right to profits as well as income, rents, and issues was given during the life estate; also that the rents, issues, income, and profits went to the beneficiary "as her absolute property," which was not found in the *Todd* case. Since in the instant case the devisees not only received the "profits," but such rents, issues, profits, royalties, and dividends were "given them absolutely," the parallel of the *DuPuy* case herein is accented by *William R. Todd, supra*. See also *Arrott* v. *Heiner*, 92 Fed. (2d) 773; *Abbot* v. *Welch*, 31 Fed. Supp. 369; *Guaranty Trust Co. of New York, Executor*, 30 B. T. A. 314. The loss was sustained during the taxable year and incurred in a transaction entered into by petitioners for profit, within the meaning of section 23 (e) (2), Internal Revenue Code. Any loss sustained upon such sale of the life interests is deductible by the petitioners.

The respondent cites the following cases in support of his contention that the loss, if any, is deductible by the estate of W. F. Harman: *Abell* v. *Tait*, 30 Fed. (2d) 54; *T. Rosslyn Beatty*, 28 B. T. A. 1286; *Peoples National Bank of Charlottesville, Virginia, Administrator*, 39 B. T. A. 565; *J. Cornelius Rathborne*, 37 B. T. A. 607; affd., 103 Fed. (2d) 301; and *DeVer H. Warner, Trustee*, 7 B. T. A. 1292; affd., 26 Fed. (2d) 1023. All these cases are distinguishable from the instant

proceedings for the reason that the property involved in the cases cited by the respondent was personal property, title to which was in the estate or trust without question at the time the loss was incurred.

The respondent also relies upon section 24 (d) of the Internal Revenue Code.[1] However, he fails to cite in his brief any authorities in support of his position that section 24 (d) and the Commissioner's regulations expressly prohibit such a deduction. as is claimed by the petitioners, and we have been unable to find any. Section 24 (d) first appeared in section 215 (b) of the Revenue Act of 1921. House of Representatives Report No. 350, 1st sess., 67th Cong., dated August 16, 1921 (C. B. 1939–1 (Part 2) p. 177) explained this provision in the following terms:

Sec. 219: Under existing law persons receiving by gift, bequest, devise, or inheritance a life or other terminable interest in property, frequently capitalize the expected future income, set up the value of this expectation as corpus or principal, and thereafter claim a deduction for exhaustion of this so-called principal on the ground that with the passage of time the "principal" or corpus is gradually shrinking or wasting. This section explicitly provides that no such deduction shall be recognized.

See also Senate Report No. 275, 1st sess., 67th Cong., dated September 26, 1921 (sec. 215) (C. B. 1939–1 (Part 2), pp. 191, 192). A reading of the Congressional Reports, section 19.24–7 of Regulations 103, and section 24 (d) itself convinces us that section 24 (d) of the Internal Revenue Code should not be extended by judicial interpretation to cover the case of a loss sustained by the life tenant upon the sale of property acquired by inheritance. *Caroline T. Kissel*, 15 B. T. A. 705 (709). We conclude, therefore, that section 24 (d), Internal Revenue Code, does not operate to prevent the deduction claimed by petitioners in the instant cases.

Having decided that the petitioners herein are entitled to deduct the amount of *their* loss upon the sale of these coal lands, the next inquiry is concerned with the amount of that loss. The evidence in this respect leaves much to be desired. However, the burden of proof is upon petitioners and any omissions or inconsistencies in the evidence are to be resolved against them. Each petitioner claims the right to deduct $28,086.93. This figure is arrived at by subtracting from the

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

* * * * * * *

(d) HOLDERS OF LIFE OR TERMINABLE INTEREST.—Amounts paid under the laws of any State, Territory, District of Columbia, possession of the United States, or foreign country as income to the holder of a life or terminable interest acquired by gift, bequest, or inheritance shall not be reduced or diminished by any deduction for shrinkage (by whatever name called) in the value of such interest due to the lapse of time, nor by any deduction allowed by this chapter (except the deductions provided for in subsections (1) and (m) of section 23) for the purpose of computing the net income of an estate or trust but not allowed under the laws of such State, Territory, District of Columbia, possession of the United States, or foreign country for the purpose of computing the income to which such holder is entitled.

sum of $52,154.43, which petitioners contend represents the fair market value [2] of each of the life estates which they inherited under the will of their father, the sum of $22,478.73 representing depletion, and the additional sum of $1,608.20 which each petitioner received as his share of the proceeds of the sale of these coal lands. This figure of $52,154.43 can not be accepted because it assumes that, because the average annual production from these coal lands for the 10 years prior to January 15, 1924, was 166,686.81 gross tons, the average annual production for the remainder of petitioners' lives will be 166,686.81 gross tons. No competent evidence has been introduced to show that these coal lands possessed sufficient coal to produce 166,686.81 gross tons annually over the lives of the petitioners, each of whom, under the stipulation of the parties, had a life expectancy of 31.8 years. Petitioner sought to establish this fact by offering in evidence, over respondent's objection, a letter dated April 14, 1924, from the Deputy Commissioner of Internal Revenue addressed to A. T. Henderson & Co., Accountants, Lynchburg, Virginia, attached to which was a copy of a report made by the Coal Valuation Section. The taxpayer involved in that communication was the coal company, the then lessee of these coal lands. In that report, made *"strictly in accordance with agreement arrived at in conference"* (italics supplied), it is stated in paragraph 2 that "In protest dated December 1923, *taxpayer* establishes values and coal en bloc at the basic dates as follows: * * * Tons en bloc at acquisition approximately 73,722,766 N. T. * * *." (Italics supplied.) Ruling having been reserved, we now rule that this communication is inadmissible in evidence. Cf. *Henry Wilson*, 16 B. T. A. 1280. (The same ruling of inadmissibility is made as to exhibits 8, 9, and 10, offered by petitioner, as to which ruling was reserved.)

There is no direct evidence in the record of the value of the life estate in the 3,191 acres herein involved. Article 15 of Regulations 63 (1922 Ed.), relating to estate tax under the Revenue Act of 1921, covers the "Valuation of annuities, and of life and remainder interests." It provides that "where the decedent was entitled to receive the entire income of certain property during the life of another person * * * [and] where the rate of annual income is not determinable * * * a hypothetical annuity at a rate of 4 percent of the value of the property should be made the basis of the calculation." Table A, which is part of article 15, gives the present value of $1 due

---

[2] SEC. 113 [I. R. C.]. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

* * * * * * *

(5) PROPERTY TRANSMITTED AT DEATH.—If the property was acquired by bequest, devise, or inheritance, or by the decedent's estate from the decedent, the basis shall be the fair market value of such property at the time of such acquisition. * * *

at the end of each year during the life of a person of 35 years of age as $16.14437. Using article 15 of Regulations 63 as a guide, it would be possible to compute the value of the life estate of each of the petitioners provided the evidence establishes the value of the fee in these 3,191 acres as of January 15, 1924. The 3,191 acres are undoubtedly included in the 4,139 acres referred to in item No. 13 of schedule A of the return for Federal estate tax. The actual value as of January 15, 1924, of the four-ninths interest which W. F. Harman possessed at the time of his death in these 4,139 acres together with a questionable two-ninths interest in approximately 1,000 acres more is stated in the return for Federal estate tax as $100,311.11. The 3,191 acres herein involved are also part of, if not in fact identical with, the 3,234 acres found in schedule F of the 1940 fiduciary income and defense return, and in the fiduciary return the "cost or other basis" of the 3,234 acres is stated as $82,662.23. The more reliable of these figures—$100,311.11 and $82,662.23—appears to be that of $82,662.23 because we know that the deed of May 29, 1940, transferred 3 tracts and that of these 3 tracts, tracts Nos. 1 and 2 totaled 3,191 acres and tract No. 3 contained 46 acres. We also know that schedule F purports to cover the same coal lands conveyed in fee by the deed of May 29, 1940. Inasmuch as schedule F treats the loss sustained upon the sale of the 46 acres separately, the inference is that the 46 acres are the same as tract No. 3 and that the 3,234 acres cover tracts Nos. 1 and 2 (3,191 acres, in fact). We, therefore, adopt $82,662.23 as the value of the fee in the 3,191 acres herein involved as of January 15, 1924. Multiplying $82,662.23 by .04, then multiplying the result thus obtained by 16.14437, and then dividing that result by 2, equals $26,690.59, which is the unadjusted basis [3] to be used by each petitioner in computing his loss upon the sale of the 3,191 acres sold during the taxable year. In order to obtain the adjusted basis [4] for determining that loss, we subtract from $26,690.59 the sum of $18,060.96, which is one-half of the depletion allowed since January 15, 1924, according to schedule F of the fiduciary return. Thus, the adjusted basis for each petitioner is $8,629.63. From the sum of $8,629.63, we further subtract the sum of $1,608.20, which each petitioner received as his share of the proceeds from the sale, leaving as the net loss of each petitioner the sum of $7,021.43.

Having determined that each petitioner sustained a loss upon the sale of the 3,191 acres of coal land to the extent of his life interest therein in the amount of $7,021.43, we are required because of section

[3] Sec. 113 (a) (5), I. R. C.
[4] Sec. 113 (b) (1) (B), I. R. C.

23 (g) (1) of the Internal Revenue Code [5] to determine whether this loss was a capital loss. Section 117 (a) (1) of the Internal Revenue Code, effective during the taxable year 1940, reads as follows:

SEC. 117. CAPITAL GAINS AND LOSSES.

(a) DEFINITIONS.—As used in this chapter—

(1) CAPITAL ASSETS.—The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1) ; * * *

We are of the opinion that the life estates in these 3,191 acres of coal lands were held by the taxpayers herein primarily for investment and not for sale and that these life estates do not come within any of the three exceptions to the meaning of the term "capital assets" as defined by the statute set forth above. Therefore, we hold that petitioners' life estates in these coal lands are capital assets. It follows that each petitioner may deduct only one-half of the sum of $7,021.43 or $3,510.72, since the loss herein involved was a long term capital loss within the meaning of that term as it is defined in section 117 (a) (5), Internal Revenue Code. *Estate of Johnson N. Camden*, 47 B. T. A. 926; affd., 139 Fed. (2d) 697; *Bell* v. *Commissioner*, 137 Fed. (2d) 454, reversing 46 B. T. A. 484.

The last issue for consideration presents the question of the right of C. Henry Harman, under section 23 (a) (1) (A) and section 23 (a) (2), Internal Revenue Code,[6] to deduct from his gross income the sum of $755 paid to an attorney during the taxable year for legal advice in connection with (a) condemnation proceedings regarding a right of way across the farm lands which he inherited for life under the will of

[5] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
  *       *       *       *       *       *       *
(g) CAPITAL LOSSES.—
(1) LIMITATION.—Losses from sales or exchanges of capital assets shall be allowed only to the extent provided in section 117.

[6] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions :
(a) EXPENSES.—
(1) TRADE OR BUSINESS EXPENSES.—
(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *
  *       *       *       *       *       *       *
(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

his father and (b) the securing of a loan for the purpose of purchasing livestock to place on this farm. We are of the opinion that the amounts paid to the attorney by petitioner for his services in procuring the loan from the Abingdon Production Credit Corporation to petitioner are not deductible by petitioner as an ordinary and necessary business expense in the year in which paid, but are in the nature of a capital expenditure. *Emil W. Carlson*, 24 B. T. A. 868; *M. P. Klyce, Administrator*, 41 B. T. A. 194 (197). Cf. also *I. N. Burman*, 23 B. T. A. 639 (643). This being so, it is impossible to allow the petitioner, C. Henry Harman, any part of the $755 claimed as a deduction under section 23 (a) (1) (A) or section 23 (a) (2), because there is no evidence in the record as to how much of the $755 was paid to the attorney for the latter's services solely in procuring the loan. It would, therefore, be futile and we do not consider it necessary to decide whether the amounts paid by the petitioner to the attorney for the latter's services in connection with the condemnation proceedings are deductible. On this issue, namely, the deductibility by the petitioner in Docket No. 1146 of the sum of $755 under section 23 (a), Internal Revenue Code, we sustain the Commissioner.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The enjoyment of a life estate through the receipt of income, profits, or gain of any kind is subject to income tax in its entirety. *Irwin* v. *Gavit*, 268 U. S. 161. The sale of a life estate is but the anticipation of that taxable income. Any loss from the sale is at most the loss of anticipated income which would have been subject to tax if received. That kind of a loss can not be turned into a deductible loss. It is inconsistent with *Irwin* v. *Gavit* to allow a life tenant to deduct any basis upon the sale of his property where, as here, he has acquired that property by devise without paying out any cost for it. Cf. *Estate of F. S. Bell*, 46 B. T. A. 484; reversed, 137 Fed. (2d) 454.

Moreover, if the petitioners are entitled to a basis for gain or loss, then that basis should be determined in accordance with section 19.113 (a) (5)–1, (f) of Regulations 103. A life estate exhausts ratably with the life upon which it is limited. Thus, the life estate which is sold is a shorter estate than the life estate which was acquired at the death of the father. The life tenant has enjoyed a part of it. The regulation takes this into consideration and is the most satisfactory solution for this difficult question which has come to my attention.

SMITH and OPPER, *JJ.*, agree with this dissent.