*Decision will be entered under Rule 50.*

BEULAH EATON McALLISTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4037.  Promulgated September 13, 1945.

*Charles B. Collins, Esq., William Diebold, Esq.,* and *Rudolph J. Welti, C. P. A.,* for the petitioner.
*Lawrence F. Casey, Esq.,* for the respondent.

718

OPINION.

OPPER, *Judge*: Sooner or later it is probable that the precise question involved in *Estate of F. S. Bell*, 46 B. T. A. 484; reversed (C. C. A., 8th Cir.), 137 Fed. (2d) 454, will have to be definitely settled. The then Board of Tax Appeals, one member dissenting, there concluded that sale of a life estate having no cost basis resulted, not in capital gain, but in ordinary income, a conclusion which was subsequently reversed by a divided Court of Appeals.

This proceeding, however, does not present the occasion for a reconsideration of that question, for the distinction in the present facts, limited as that may appear, seems to us to require that respondent's determination be sustained, regardless of the principle of the *Bell* case.

The general subject narrows in these cases to a resolution of the possible conflict between *Blair* v. *Commissioner*, 300 U. S. 5, on the one hand, and *Hort* v. *Commissioner*, 313 U. S. 28, and *Irwin* v. *Gavit*, 268 U. S. 161, on the other, or at least to the question of which line of authority is more nearly applicable.

In reversing the *Bell* case, the court relied upon *Blair* v. *Commissioner* for the proposition that a life estate constituted property, and concluded that its sale gave rise to capital gain. It distinguished the *Hort* case in the following language: "* * * *Blair* v. *Commissioner* does not conflict with *Hort* v. *Commissioner* * * * which involved the extinguishment of a contractual right to future rentals, and not an assignment of an interest in property."

In the *Hort* case the Supreme Court had assumed that the lease in question was "property" and continued: "Simply because the lease was 'property' the amount received for its cancellation was not a return of capital * * * the disputed amount was essentially a substitute for rental payments * * * and it is immaterial that for some purposes the contract creating the right to such payments may be treated as 'property' or 'capital.'"

The distinction drawn by the court in the *Bell* case must accordingly have been limited to the circumstance that the rights in the *Hort* case were "extinguished," as opposed to being "assigned," since, in both, the element of some sort of "property" was concededly present. That being so, we view the present situation as falling within that distinction, petitioner having received the payment in question in return for surrendering her rights under the trust to receive future income pay-

ments, just as the taxpayer in the *Hort* case surrendered its rights to the rental payments under the lease. She did not assign her interest in the trust, as did petitioners in the *Bell* case. See also *Sayers F. Harman*, 4 T. C. 335; *Estate of Johnson N. Camden*, 47 B. T. A. 926; affirmed per curiam (C. C. A., 6th Cir.), 139 Fed. (2d) 697. The facts show with unmistakable clarity, by repeated reference in the various documents, that the payment here in question was made "in full consideration of the surrender by her of her life interest in said trust" and upon her "consenting to the determination and cancellation of said trust." There was no transfer or assignment any more than there was in *Hort* v. *Commissioner*.

When it is considered further that the payment was "to represent the value of her life interest in the aforesaid trust," which consisted purely of the right to receive income, and that the "settlement figure is based to a large extent upon her life expectancy," as the documents recite, it becomes apparent that this was a current payment of income in anticipation, in exchange for the relinquishment of rights to receive that same income over the future years. Since *Irwin* v. *Gavit*, *supra*, makes it clear that such income, whenever received, is included in the definition of gross income, and, as such, is taxable to petitioner, the analogy to the *Hort* case is complete, and "Where, as in this case, the disputed amount was essentially a substitute for * * * payments which § 22 (a) * * * characterizes as gross income, it must be regarded as ordinary income * * *." *Hort* v. *Commissioner*, *supra*.

That the applicability of the *Hort* case must proceed at least so far seems to us the necessary outcome of what actually occurred here, as disclosed by the record. Petitioner was in need of funds. She was under "the necessity of obtaining money with which to pay various claims of the estate of her husband * * *." She proposed to the trustees—or they proposed to her—an immediate lump sum payment in lieu of the periodic future installments. "Complainant [petitioner] is advised and verily believes that said trustees and remaindermen * * * will pay to complainant the sum of $55,000, together with all accumulated income from the trust corpus, which is payable to her at 6% per annum, computed to the date on which she receives the said sum of $55,000, in full consideration of the surrender by her of her life interest in said trust, which settlement figure is based to a large extent upon her present life expectancy. * * *"

It is difficult to envisage circumstances from which it could more clearly appear that by agreement of the parties petitioner's future income payments were to be delivered to her immediately at their discounted value; and, of course, since they would not again be due, the trust must end. Such payments, as we have had occasion to note,

were taxable in full as ordinary income, whenever received. It is inconceivable that, by the agreement to anticipate, the parties could convert taxable income into a deductible loss.

It follows that there was no error in respondent's action.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

Van Fossan and Kern, *JJ.*, dissent.

---

Disney, *J.*, dissenting: The majority opinion in my opinion is opposed to statute, departmental regulation and attitude, and decisions both of this Court and others.

The life estate sold by the petitioner was received by devise. Section 113 (a) (5) provides that property received by devise has a basis of the value at the time of acquisition—in this case value at the date of the death of petitioner's husband. That a life interest in a trust fund (not inalienable by its terms) is a property interest is too firmly established to require argument. *Blair* v. *Commissioner*, 300 U. S. 5. That a life estate is alienable (in the absence of restrictions upon alienation) can not be denied in the face of many decisions. *Bell* v. *Commissioner*, 137 Fed. (2d) 454, reversing 46 B. T. A. 484; *Sayers F. Harman*, 4 T. C. 335 (acquiescence by Commissioner, I. R. B. No. 6, Mar. 26, 1945) ; *Estate of Johnson N. Camden*, 47 B. T. A. 926; affd., 139 Fed. (2d) 697; *Orrin G. Wood*, 40 B. T. A. 905; *Elmer J. Keitel*, 15 B. T. A. 903. It is alienable "like any other property," *Commissioner* v. *Field*, 42 Fed. (2d) 820. Indeed, I do not understand that the majority opinion disagrees with those decisions or denies the alienability. That the life estate here was not inalienable as set up by a spendthrift trust is settled for us by the decision of the local court allowing the alienation. Though only by inference so holding, that court could not, without so holding, have rendered the decision it did, and such opinion, though only by inference, binds us. *Irving National Bank* v. *Law*, 10 Fed. (2d) 721.

We have, then, in this case, sale of alienable property having a base provided by statute. Of course that value must be ascertained, and the Treasury Department has devised a way to so value a life interest— by the use of expectancy tables based upon the life expectancy of the recipient of the life interest at the date of acquisition. I. T. 2076, C. B. III–2, p. 18, provides specifically for such valuation. The use of such tables is too well settled to be arguable. I. T. 2076 is altogether consistent with the statute, section 113 (a) (5). Thus we arrive at the petitioner's base for her life estate. But Regulations 103, section 19.113 (a) (5)–1 (*e*), specifically provides that such base is *always the same* (except of course for the necessary adjustment for depreciation or depletion upon property subject thereto). There be-

ing no such depreciation or depletion applicable here, the basis petitioner had at acquisition of the property remains the same, and when she sold for $55,000 she took a capital loss, the basis being a greater amount.

The majority opinion is obviously based upon some idea or fear that the petitioner should not be allowed her original base because she had enjoyed the income from the life estate from acquisition to date of sale. The answer is, first, that base in property is not affected or adjusted by the mere receipt of income therefrom; and, second, that if there should be adjustment of the base because of lapse of time, it is the function of Congress, and not of this Court, to provide the adjustment. I see no reason to indulge here in judicial legislation, most particularly when Congress has specifically prescribed the base in section 113 (a) (5), and the Treasury Department has followed it in regulation and ruling.

Section 24 (d) offers no aid on this subject. The words of the section referring to "deduction" may not, with reason, be held to apply to the computation of gain or loss on sale of property; and the Committee Report thereon plainly shows such to be the intent. H. R. No. 350, 1st sess., 67th Cong., Aug. 16, 1921 (C. B. 1939–1, pt. 2, p. 177). The regulations, too, make it clear that the only intent of the section was to prevent capitalization of a life interest and deduction of a portion thereof by amortization. Regulations 103, section 19.24–7, after quoting the pertinent part of the statute, adds: "In other words, the holder of such an interest so acquired may not set up the value of the expected future payments as corpus or principal and claim deductions from shrinkage or exhaustion thereof due to the passage of time. (See section 113 (a) (5).)" I suggest that the situation so explained is a long step from computing gain or loss upon sale of the property interest.

Finally, I see no reason on this question to refuse to follow either our own opinion on this particular question in *Sayers F. Harman*, *supra*, and that of the Circuit Court of Appeals for the Eighth Circuit, reversing our earlier view, in *Bell* v. *Commissioner*, *supra*. The latter reviews the field of authority, including *Irwin* v. *Gavit*, 268 U. S. 161, upon which the majority opinion here leans, and *Helvering* v. *Horst*, 311 U. S. 112; and *Harrison* v. *Schaffner*, 312 U. S. 579, held assignments of life interests to be transfers of interest in trust assets and not merely assignments of income and concluded that a sale of a life interest resulted in capital gain. I think we should follow it. Fear that the petitioner may have a loss is offset by the fact that it might have been a gain—for the trust fund might well have appreciated, by wise investment.

As pointed out in the *Bell* case, the Supreme Court has had opportunity to overrule the *Blair* case, and has not "either expressly or

by implication," done so. That case squarely decrees that a property interest was owned by the petitioner, and such cases as *Harrison* v. *Schaffner*, involving mere assignment of income, do not apply. I think it late to hold, as the majority opinion does in essence, that sale of the life estate here involved is anticipation of income. I respectfully dissent.

BLACK, *J.*, agrees with this dissent.