RE: SETTLEMENT OF THE ESTATE OF FREDERICK F. MCINTOSH, SR.

(No. 11016)

Submitted May 5, 1959.                  Decided June 16, 1959.

584

*Samuel D. Lopinsky, Ivor Boiarsky, Wilbur Webb, John Ramsey, Mark Bogart,* for plaintiffs in error.

*Chas. E. Mahan, G. F. Hedges, Jr., Robert W. Burk, Thomas W. Bayley,* for defendants in error.

GIVEN, PRESIDENT:

By consent of the heirs and distributees, F. F. McIn-

tosh, Jr. was appointed administrator of the estate of his father, F. F. McIntosh, Sr., who died intestate June 28, 1950, leaving a very substantial estate, consisting of real and personal property, including undivided interests in numerous partnerships. After appraisement of the estate, apparently in a manner satisfactory to all interested parties, and after the commissioner of accounts, to whom the estate had been referred for settlement, had made a report of creditors and beneficiaries, on November 28, 1951, the first annual report of settlement of the accounts of the administrator was filed. On December 1, 1952, the second report of settlement was filed. As to such reports, though covering a very large proportion of the estate and showing payments to numerous creditors, and showing substantial payments to each of the heirs and distributees, no exception was filed. The third and final report of settlement, though "made up and completed" November 12, 1953, was not filed until November 20, 1957, after the entry of an order by the County Court of Roane County requiring the filing thereof. The delay, in part, at least, was occasioned by action of the parties in interest. The final report was confirmed by the County Court of Roane County on December 4, 1957.

On December 11, 1953, Dorothy E. McIntosh, one of the two plaintiffs in error, filed before the commissioner of accounts her exceptions to the final report. After the filing of the report with the county court, further exceptions to the report were filed by plaintiffs in error. The exceptions related to questions concerning the manner of the accounting of the administrator, waste and improper management of the estate by the administrator, receipt of sums by the administrator not reported, improper withdrawls of sums from the estate by the administrator, failure of the commissioner of accounts to return proper vouchers with his reports, and the allowance of improper commissions to the administrator.

The final report shows on its face the disbursement and distribution of the balance remaining in the hands of the administrator at the time of the making of the

prior report of settlement, and the additional receipts received by him subsequent to that time. The distribution, after payment of all claims of creditors reported, consisted largely of undivided interests in numerous mining partnerships, in real estate, and certain producing gas wells, and a division of certain personal property. Insofar as can be determined from the several reports, all claims of creditors have been satisfied, and a complete division or distribution of the remaining estate distributed to the interested parties. No inequity is perceived on the face of the report as to such division or distribution, and no attempt was made by plaintiffs in error, or other person, to establish by evidence any such inequity, or, in fact, to substantiate any question raised by the exceptions.

The several reports of settlement were confirmed by the County Court of Roane County, and the circuit court of that county refused a writ of error to the order confirming the final report of settlement. The errors assigned in the petition to the circuit court praying the writ of error, included, substantially, at least, all questions raised by the exceptions to the final report.

By an instrument dated July 3, 1950, designated "Power of Attorney", Virginia McGarr McIntosh, Dorothy E. McIntosh and Mary Alice McIntosh authorized and empowered F. F. McIntosh, Jr. as their attorney in fact, for a period of ten years, "to take over, manage and control" all of the estate of F. F. McIntosh, Sr., including all property, "real, personal and mixed, and wherever located or situated, of which the said Frederick F. McIntosh, Sr., died seized and possessed, including cash in banks, all United States Government Bonds, securities of all kinds and character * * * to make disposition by sale or otherwise of any or all of said property * * * to collect all rentals or other incomes or assets and royalties", with "power and authority * * * to compensate himself to a reasonable extent for the services required of him hereunder, if he so elects".

By an instrument dated November 29, 1955, designated

"Deed and Assignment", the widow and each of the heirs and distributees of the estate sold and conveyed unto trustees a very substantial part of the estate, in trust, "to hold, manage, sell and dispose of", after appraisal by the trustees. The instrument authorized the trustee to sell unto F. F. McIntosh, Jr., within sixty days after the appraisal, the interests of his co-tenants in "any tract or parcel of land which he shall designate by writing". Any property not purchased by F. F. McIntosh, Jr. was to be sold by the trustees. By a subsequent written instrument, dated March 12, 1956, the trustees sold and conveyed to F. F. McIntosh, Jr. for a valuable consideration, the other parties in interest joining in the conveyance, "all of the assets and property of the partnership of F. F. McIntosh & Son, including, but not limited to, the merchandise and stock in trade, fixtures, supplies and equipment, accounts and other receivables, cash on hand and in bank, cash value of life insurance, stocks, bonds and leases, and the good will and trade name * * *. By a further "Memorandum of Agreement", dated March 15, 1956, the interested parties sold and conveyed unto F. F. McIntosh, Jr. certain other personal property, and all interested parties agreed "that all acts and things done by the appraisers and trustees under and pursuant to said Deed and Assignment of November 29, 1955, be, and the same are, hereby approved, ratified and confirmed". It seems unnecessary to here detail other terms and express agreements concerning the estate by or among the interested parties.

Before the commissioner of accounts filed with the County Court of Roane County his final report of settlement, the administrator filed before the commissioner of accounts, after proper notice, a plea of res judicata, together with certain testimony and exhibits, in support of the plea. The plea alleges, in effect, that "all of the parties in interest" were before the United States District Court for the Southern District of West Virginia, "on the very same matters and issues now pending in this court and presently before" the commissioner of accounts; that pursuant to a written agreement by all of

such parties, heirs and distributees, a final order "adjudicating all of such matters, things and issues", was entered dismissing the "action agreed settled out of court, with prejudice to all of the parties thereto". The order mentioned reads: "This day came the plaintiff, Mary Alice McIntosh, by counsel, and announced in open court that all matters in controversy have been compromised and settled and moved that this action be dismissed.

"And there being no objection thereto, this action is dismissed, settled and agreed and is ORDERED retired from the docket of this court." The order was entered on the motion of Mary Alice McIntosh, and was "approved" by counsel for F. F. McIntosh, Jr., Virginia McGarr McIntosh and Dorothy E. McIntosh.

The complaint filed in the United States District Court for the Southern District of West Virginia, exhibited as evidence before the commissioner of accounts, along with other papers filed in that proceeding, establishes that the proceeding was instituted by Mary Alice McIntosh against "Frederick F. McIntosh, Jr., individually, Frederick F. McIntosh, Jr., as Administrator of the Estate of F. F. McIntosh, deceased, Frederick F. McIntosh, Jr., as Attorney in Fact for Mary Alice McIntosh, Frederick F. McIntosh, Jr., as Managing Partner of a partnership doing business under the name and style of F. F. McIntosh & Son, Dorothy E. McIntosh and Virginia McG. McIntosh". The jurisdiction of that court was based on diversity of citizenship. After formal allegations the complaint alleges, in effect, the appointment and qualification of F. F. McIntosh, Jr. as administrator of the estate of F. F. McIntosh, Sr.; the existence and the interest of F. F. McIntosh, Sr. in the partnership of F. F. McIntosh & Son; the execution of the power of attorney mentioned above; that F. F. McIntosh, Jr. "conceived the plan of carrying * * * on and charging the losses in part to plaintiff" which he incurred in the operation of that partnership, and is liable to plaintiff for the losses incurred "by reason of his breach of this duty"; that a large part of such

losses, in the amount of $86,000.00, was paid by the administrator out of the funds of the estate; that "other large sums were squandered and lost in the operation of the cattle business"; that F. F. McIntosh, Jr. has paid unto himself certain sums "as salary for conducting the affairs of the partnership"; that part of the estate consisted of "interests in oil and gas lands and oil and gas leaseholds", and "large and valuable farms"; and "that defendant Frederick F. McIntosh, Jr., individually as surviving partner of the firm of F. F. McIntosh & Son, as administrator of the estate of F. F. McIntosh, as attorney in fact for plaintiff, and as manager of the business conducted under the name of F. F. McIntosh & Son, has in many ways unknown to plaintiff misused, wasted, dissipated and unlawfully and fradulently squandered the assets of F. F. McIntosh & Son; has fraudulently and in violation of law, paid to himself in various capacities large sums of money, the amount of which is unknown to plaintiff"; and that "In the management of such properties, Frederick F. McIntosh, Jr. without authority from plaintiff, paid himself a salary, made unauthorized deductions and payments from plaintiff's account, made unauthorized charges to plaintiff against the funds which he collected from said properties, and withheld and still withholds large sums of money properly belonging to this plaintiff, out of funds collected from said operations".

The pertinent parts of the prayer of the bill of complaint are to the effect that F. F. McIntosh, Jr. be required to pay plaintiff her share of the assets of the partnership of F. F. McIntosh & Son; that he be required to account for and pay the several sums "unlawfully lent or advanced"; that he be required to account for all sums which he collected "as a co-tenant in possession of the lands and farms"; that he "be required to make and settle his accounts covering the interests in oil and gas" properties; that plaintiff have "discovery and disclosure * * * of all books, accounts, records and payments relating to the several matters referred to in this complaint and such other matters as may become material"; and that the matter be referred to a special master with au-

thority "to render full and complete accounts as between the parties hereto".

In *Sayre's Adm'r* v. *Harpold et al.*, 33 W. Va. 553, 11 S. E. 16, this Court held: "1. An adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action. It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the *status* of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*" See *West Virginia Sanitary Engineering Corp.* v. *Kurish*, 137 W. Va. 856, 74 S. E. 2d 596; *Gentry* v. *Farruggia*, 132 W. Va. 809, 53 S. E. 2d 741; *Walker* v. *West Virginia Gas Corp.*, 121 W. Va. 251, 3 S. E. 2d 55; *Rogers* v. *Rogers*, 37 W. Va. 407, 16 S. E. 633. A judgment recording a compromise settlement and dismissing the action "settled and agreed" is sufficient on which to found a res judicata plea. *Central Trust Co.* v. *Harless*, 108 W. Va. 618, 152 S. E. 209; *Murden* v. *Wilbert*, 189 Va. 358, 53 S. E. 2d 42; 50 C.J.S., Judgments, Section 634.

There appears to be no room for doubt that the facts alleged in the res judicata plea were fully established by the administrator before the commissioner of accounts. There was no attempt on the part of plaintiffs in error to explain or deny any of such facts. The parties now before this Court were parties to the action prosecuted in the United States District Court for the Southern District of West Virginia, appeared by answers therein and approved the entry of the compromise order which dismissed the action as "compromised and settled". In the former action the prayer was to the effect that the administrator be required to make proper settlement of all accounts relating to the estate. No more could be requested or required in the instant proceeding.

If any doubt remains, however, as to the application of the res judicata principle, we come face to face with the final report of the commissioner of accounts, confirmed by the County Court of Roane County, and, in effect, approved by the circuit court of that county in refusing a writ of error, with nothing contained in the report to substantiate any of the exceptions to the report made by the plaintiffs in error. Code, 44-2-19, provides in part that "After the report of the commissioner on the claims against the estate of any decedent has been confirmed by the county court, or the circuit court on appeal, or corrected and confirmed after appeal, the same shall be forever binding and final." Code, 44-4-20, provides that "The report, to the extent to which it may be so confirmed by the county court, or confirmed on appeal by the circuit court, shall be taken to be correct, and shall be binding and conclusive upon creditors of a decedent's estate, and binding and conclusive upon every beneficiary of the estate or trust who has had notice that the report has been laid before the commissioner for settlement, or upon completion of the report was notified by the commissioner of its completion * * *". In *Re: Estate of H. B. Hauer*, 135 W. Va. 488, 63 S. E. 2d 853, we held: "1. The findings of fact by a commissioner of accounts, approved by the county court, and upheld by the circuit court on review, will not be disturbed by this Court unless against the preponderance of the evidence or plainly wrong." See *Fields* v. *West*, 83 W. Va. 128, 97 S. E. 597; *American Bank & Trust Co.* v. *Douglass*, 75 W. Va. 207, 83 S. E. 920; *Dearing* v. *Selvey, Executor*, 50 W. Va. 4, 40 S. E. 478; 8 M. J., Executors and Administrators, Section 243.

Plaintiffs in error rely heavily on Code, 44-2-5, relating to the presentation of vouchers as part of the proof of claim of creditors against the estate, the contention being that since the report of the commissioner of accounts did not show that any vouchers were returned with the report to the county court, error appears on the face of the report. But the fact that such vouchers were not re-

turned with the report does not necessarily determine that the commissioner of accounts did not have before him proper vouchers before the allowance of the claims of creditors. Code, 44-2-6, provides in part that "Every claim so itemized, so accompanied by proper vouchers, and so verified, shall be taken to be proved, and shall be allowed, unless before the commissioner shall make up his report of claims the personal representative or a distributee, or a legatee, or, in the case of estates that appear to be insolvent, a creditor, shall file before the commissioner a counter affidavit, denying the claim in whole or in part * * *". No such affidavit was filed by the plaintiffs in error, or other person, as to any such claim allowed, and none of the exceptions made to the report relate to any such claim. No claim of any creditor of the estate is in any way involved in the instant proceeding. Code, 44-4-18, requires only that the commissioner of accounts return with his report "such of the vouchers as any person interested may desire him to return, or as he may deem proper". No request for the return of any voucher was made by plaintiffs in error. Code, 44-4-19, makes it clear that vouchers not returned with the report and "remaining with the commissioner", after the time of the confirmation of the report, may be returned by the commissioner "to the party who filed the same". The commissioner of accounts appears to have complied with the requirements of the applicable statutes, and plaintiffs in error have not attempted by proof or otherwise to establish any improper management of the estate by the administrator. In such circumstances, no prejudice could have resulted to plaintiffs in error. See 8 M.J., Executors and Administrators, Section 234.

Plaintiffs in error further complain as to the amount of compensation allowed the personal representative of the estate, but have pointed out nothing which would justify reversal of the lower court relating thereto. The total compensation allowed the personal representative is less than five per cent of the receipts shown by the reports of settlement to have been received and disbursed by him. The several agreements mentioned contained

provisions clearly indicating that the person acting as the administrator was empowered to continue the operation of certain partnerships for the benefit of all the distributees, and to control, manage or sell the real estate belonging to the estate for the benefit of the heirs, thus requiring of the person acting as administrator duties and responsibilities not usually required of a personal representative, and plaintiffs in error expressly agreed that the person so acting should receive additional compensation for performing such duties. The accounting and settlement as to such matters before the commissioner of accounts was not objected to and appears to have been an acceptable practice. See *Brown* v. *McGraw*, 98 W. Va. 607, 129 S. E. 124; *Fields* v. *West*, 83 W. Va. 128, 97 S. E. 597. Moreover, of the total compensation allowed the administrator, $47,016.43, $44,646.10 was allowed by the first and second reports of settlement, concerning which no objection or exception was made.

Finding no prejudicial error in the judgment of the Circuit Court of Roane County complained of, or in the order of the County Court of Roane County confirming the final settlement, the judgment of the circuit court is affirmed.

*Affirmed.*