JAMES EARL WHITE

v.

SWCC AND BETHLEHEM MINES CORP.

(No. 14588)

Decided February 5, 1980.

*George G. Burnette, Jr.,* for appellant.

*Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty and J. Randolph Query* for appellees.

MCGRAW, JUSTICE:

Claimant-appellant appeals from an order of the Workmen's Compensation Appeal Board which affirmed a ruling of the Workmen's Compensation Commissioner rejecting appellant's claim to compensation benefits for occupational pneumoconiosis. The ground for the denial was that the claimant had not been exposed to the hazards of occupational pneumoconiosis for a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure. The sole issue for our consideration is: does a nonmedical finding of "no harmful exposure" to the hazards of occupational pneumoconiosis in a previous claim preclude

consideration of the claimant's prior work history in a subsequent application for benefits grounded on continued exposure. We do not believe that it does and we reverse the ruling of the Appeal Board.

Appellant was employed intermittently at the same general location by three different employers between May 15, 1946, and June 20, 1974, and he performed a variety of duties in and around the mines. He was employed by appellee, Bethlehem Mines Corporation, from July 1, 1967, until June 20, 1974, at which time he ceased to work entirely.

On May 29, 1973, appellant filed an application for occupational pneumoconiosis benefits, accompanied by a medical diagnosis of pneumoconiosis dated April 17, 1973, with the Workmen's Compensation Commission. On November 2, 1973, the Commissioner found that the record presented insufficient evidence that appellant had been exposed to the hazards of occupational pneumoconiosis and ordered hearings on the following nonmedical issues:

1. Was the claimant exposed to the hazards of occupational pneumoconiosis while in the employ of Bethlehem Mines Corporation?

2. Was the exposure for a continuous period of 60 days or more?

3. Was the exposure continuous for at least 2 years in the 10 years immediately preceding the date of last exposure?

4. Was the claimant exposed for as much as 10 years during the fifteen year period preceding the date of his last exposure?

After several hearings, at which testimony on these questions were taken, the Commissioner, by order dated July 16, 1974, rejected appellant's claim on the ground that appellant had had "no harmful exposure to the hazards of occupational pneumoconiosis while in the employ of Bethlehem Mines Corporation. . ." An appeal was taken from this ruling to the Appeal Board on the factu-

al question of whether a preponderance of the evidence disclosed exposure for the required statutory period.[1] Appellant also moved for remand on the ground that the record was too confused to permit proper determination of the exposure issue. The Appeal Board found that the record supported the Commissioner's nonmedical findings and affirmed. An appeal to this Court was refused on May 5, 1975. The Commissioner's final order, affirming the order of July 16, 1974, was issued May 14, 1975.

On May 27, 1975, appellant filed a second application for occupational pneumoconiosis benefits, accompanied by a medical diagnosis of pneumoconiosis dated May 23, 1975. The Commissioner entered an order rejecting the claim on March 1, 1976, on the ground that claimant had not been "exposed to the hazards of occupational pneumoconiosis for a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure..." Pursuant to timely objection, a hearing was held in which appellee-employer's counsel objected to the offering of any testimony by appellant on the grounds that (1) the disposition of the original claim resulted in a determination that there was no harmful exposure to occupational pneumoconiosis before May 29, 1973, the date the first claim was filed, (2) this determination was res judicata with respect to the issue of exposure and precluded the introduction of any evidence of appellant's work history prior to that date, and (3) since appellant had worked only 13 months after that date, he could not possibly show exposure to occupational pneumoconiosis hazards for the statutory period. This objection was sustained by the trial examiner and appellant was not permitted to testify. On September 12, 1978, the Commissioner, on the

[1] W.Va. Code § 23-4-1 [1971] reads, in material part:

Provided, that compensation shall not be payable for the disease of occupational pneumoconiosis, or death resulting therefrom, unless the employee has been exposed to the hazards of occupational pneumoconiosis in the State of West Virginia over a continuous period of not less than two years during the ten years immediately preceding the date of his last exposure to such hazards.

basis of the record, affirmed his order of March 1, 1976, rejecting appellant's claim.

An appeal was taken to the Appeal Board on the questions of whether there was sufficient evidence to find that claimant had been exposed to occupational pneumoconiosis for the statutory period and whether the ruling in the prior case was res judicata with respect to the issue of exposure. The Appeal Board affirmed the Commissioner's ruling on May 29, 1979, and it is from this ruling that appellant petitioned this Court.

The only issue with which we are concerned is whether the Commissioner's nonmedical finding of "no harmful exposure" to occupational pneumoconiosis hazards in the original claim precludes consideration in the subsequent claim of appellant's work history prior to May 29, 1973. The correctness of the Commissioner's ruling in the original case is not at issue here. However, a question is raised as to the true meaning of the order of July 16, 1973, rejecting appellant's original claim. This question must be dealt with before considering the res judicata issue.

The Commissioner's order rejected appellant's claim on the ground that appellant had suffered "no harmful exposure" to occupational pneumoconiosis hazards while employed by appellee. No other findings or conclusions were made. Appellee-employer apparently interprets the order as holding that appellant was not exposed to the hazards of occupational pneumoconiosis at all while in its employ. The employer insists that since this issue has been adjudicated, evidence of exposure before May 29, 1973, may not be offered in support of appellant's second claim. On the other hand, appellant maintains that the order merely embodies the findings of the Commissioner that appellant had not met his burden of proving exposure to the hazards of occupational pneumoconiosis for the statutory period from the date of last exposure, May 29, 1973, and that for this reason his exposure was found not to be harmful.

We cannot accept appellee-employer's interpretation of the Commissioner's findings as correct. First, the finding of the Commissioner, as reflected by the original order, is not that there was no exposure whatsoever or no *actual* exposure, but rather that there was no *harmful* exposure. The plain language of the order indicates that there was actual exposure of the appellant to the hazards of occupational pneumoconiosis but that the exposure shown was not harmful. Moreover, this interpretation is supported by substantial evidence in the record of the original proceeding that appellant was in fact exposed to dust hazards while in the employ of appellee.[2] In view of this we must conclude that the final order of the Commissioner did not include a finding of no exposure whatsoever during appellant's employment for appellee.

At the same time, we believe appellant's construction of the Commissioner's findings is correct. Although there is no indication in the order itself that the finding of no harmful exposure was based only on appellant's failure to show exposure for the statutory period, clearly the only issues upon which the Commissioner requested hearings in the original proceeding were the nonmedical question of whether there was actual exposure to the hazards of occupational pneumoconiosis and whether there was exposure for the minimum statutory period. We have already dealt with the question of actual exposure. The record is confused as to how long appellant's exposure to dust hazards continued while he was in the employ of appellee. We must conclude that the Commissioner viewed the testimony of appellant as insufficient

[2] Appellant testified that in the ten years preceding the date of last exposure, he worked underground in the mines a total of only three weeks in 1964 for another employer. His duties thereafter, and while in the employ of appellee, included work in the "big" shop, work in the "little" shop, work in the boiler house or "bath-house," work on a construction crew rebuilding a dump at a tipple and work as a wire hanger. Appellant admitted that not all of these duties involved dust hazards, but his uncontroverted testimony indicated that at least part of his employment for appellee has exposed him to the hazards of occupational pneumoconiosis.

to prove exposure for the statutory period and for that reason rejected appellant's original claim.[3]

Having made these determinations, it is left to us to decide what effect the Commissioner's ruling in appellant's original claim has upon the introduction of evidence of his work history prior to May 29, 1973, in appellant's subsequent claim. We are of the opinion that the ruling does not constitute a bar to the introduction of such evidence under the doctrine of res judicata.

The doctrine of res judicata is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once. *Marguerite Coal Co. v. Meadow River Lumber Co.*, 98 W.Va. 698, 127 S.E. 644 (1925). A statement of the general rule is that a judgment rendered on the merits by a court of competent jurisdiction in a proceeding precludes subsequent litigation between the same parties of all matters adjudicated in the first proceeding and those which could have been decided there. *See, State v. See*, 145 W.Va. 322, 115 S.E.2d 144 (1960); *Gentry v. Farruggia*, 132 W.Va. 809, 53 S.E.2d 741 (1949); *Burner v. Hevener*, 34 W.Va. 774, 12 S.E. 861, (1891). Thus, the issue raised and determined in the second action or suit must be identical with the issue raised and determined in the first action or suit. Syl. Pt. 1, *Soto v. Hope Natural Gas Co.*, 142 W.Va. 373, 95 S.E.2d 769 (1956). The essential elements of res judicata are identity in the thing sued for,

---

[3] Although the issue was not brought to our attention by the parties, we question that the Commission has the jurisdiction, at the stage of the proceedings reached here, to make a finding of "no harmful exposure" for any reason other than failure to show sufficient exposure for the statutory period, W.Va. Code § 23-4-15b empowers the Commissioner to determine the nonmedical threshold question of exposure and any other nonmedical facts that are relevant to the disposition of the claim. The question of the degree of harm, however, would appear to us to involve a medical determination beyond the scope of the Commissioner's statutory authority and the ordinance in this case. Therefore, we doubt that a finding by the Commissioner of "no harmful exposure," even if intended to refer to the extent of the harm done to a claimant, as proposed by appellee, could be upheld as valid.

identity in the cause of action, identity of persons and of parties to the action, and identity of quality in the persons for or against whom the claim is made. *Pearson v. Dodd,* ___ W.Va. ___, 221 S.E.2d 171, *appeal dismissed* 429 U.S. 396, *reh. denied* 430 U.S. 911 (1975); *Wolfe v. Forbes,* ___ W.Va. ___, 217 S.E.2d 899 (1975); *Staubs v. Commissioner,* 153 W.Va. 337, 168 S.E.2d 730 (1969).

For purposes of res judicata, a "cause of action" is the fact or facts which estblish or give rise to a right of action, the existence of which affords a party a right to judicial relief. 50 C.J.S., *Judgments* § 648; *see, McNunis v. Zukosky,* 141 W.Va. 145, 89 S.E.2d 354 (1955). The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. *Gallaher v. City of Moundsville,* 34 W.Va. 730, 12 S.E. 859 (1891); *see McNunis v. Zukosky,* 141 W.Va. 145, 89 S.E.2d 354 (1955). If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata.

We think it is clear that res judicata operates to bar the relitigation of the Commissioner's nonmedical finding of "no harmful exposure" as of May 29, 1973. However, we do not see this as an issue in this case. Appellant is not requesting a readjudication of that question, but rather, is litigating a totally new and different issue, that of, whether, as a result of his exposure to dust hazards as of June 20, 1974, he has suffered harmful exposure and should be considered for occupational pneumoconiosis benefits. Clearly, the evidence required to prove the first claim is substantially different from that required to support an award in the second claim. The two claims require that different facts be put into evidence in order to support recovery; namely, the period of time for which appellant was exposed to dust hazards, even though at some point the evidence in the two cases may overlap.

The logic of this view is obvious. If we were to accept appellee's interpretation of the res judicata effect of the

original ruling, we would have to ignore the fact that occupational pneumoconiosis is a condition which develops as a result of gradual impaction of dust particles upon the operative substances of the lungs.[4] While appellant has been judged not to have been harmfully exposed to the hazards of occupational pneumoconiosis as of May 29, 1973, it is possible that the evidence of his exposure for the 13 months he continued to work after that date, when considered along with his prior work history, might lead to a findings of exposure sufficient to support an award of benefits.[5] To refuse appellant the opportunity to present such evidence would contravene the purpose and spirit of the Workmen's Compensation Act.

Moreover, while the doctrine of res judicata is applicable to Workmen's Compensation cases, *Pnakovich v. Commissioner,* ____ W.Va. ____, 259 S.E.2d 127 (1979), that doctrine is not rigidly enforced where to do so would defeat the ends of justice. *Gentry v. Farruggia,* 132 W.Va. 809, 53 S.E.2d 741 (1949). Considering the scope and purpose of the Workmen's Compensation Act and the quasi-judicial proceeding in which claims are decided, we cannot apply the principles of res judicata to bar

---

[4] W.Va. Code § 23-4-1 defines occupational pneumoconiosis as "a disease of the lungs caused by the inhalation of minute particles of dust *over a period of time* due to causes and conditions arising out of and in the course of employment" (emphasis added).

[5] Appellee seems to argue that our recent holding in *Ford v. Commissioner,* ____ W.Va. ____, 236 S.E.2d 234 (1977), does not support this conclusion. There, we held that a claimant who filed a second claim for occupational pneumoconiosis benefits was entitled to an award as a new injury if it could be proved that there was a new period of exposure of the duration required by the statute. The effect of *Ford* was to confirm that each exposure to dust hazards for the required time period constitutes a new and separate injury. We note that *Ford* differs from the case before us in that the claimants' original occupational pneumoconiosis claim there resulted in awards of 15% permanent partial disability. The first claims had been approved and compensation awarded. Any subsequent application for benefits required a new injury and a different period of exposure. This is not the case here.

applications where the only obvious reason for rejection of the original claim was that it was untimely filed.

For these reasons, we hold that where a claimant's original application for occupational pneumoconiosis benefits is rejected on the nonmedical finding of "no harmful exposure," that determination does not preclude the consideration of evidence of claimant's prior work history within the statutory period in a subsequent application for benefits which is based on continued exposure after the filing date of the first claim. The ruling of the Appeal Board of May 29, 1979, is reversed and the cause is remanded to the Commissioner for further proceedings and in accordance with this opinion.

*Reversed and remanded.*