557 S.E.2d 883

Diana L. SLIDER and Randy Slider, Plaintiffs Below, Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Erie Insurance Group, Charles Noffsinger, Individually and as an Employee at State Farm Automobile Insurance Company, Nationwide Mutual Insurance Company, Defendants Below, Appellees.

No. 29292.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 6, 2001.

Decided Dec. 13, 2001.

478

David A. Jividen, Esq., James B. Stoneking, Esq., Bordas, Bordas & Jividen, Wheeling, for Appellants.

Catherine D. Munster, Esq., Tiffany R. Durst, Esq., McNeer, Highland, McMunn & Varner, Clarksburg, for Appellees State Farm Mutual Automobile Insurance Company and Charles Noffsinger.

James D. Lamp, Esq., Benu Rellan, Esq., Lamp, O'Dell, Bartrum, Levy & Trautwein, Wheeling, for Appellee Erie Insurance Group.

McGRAW, Chief Justice.

Diana and Randy Slider, plaintiffs below and appellants herein, appeal the September 8, 2000 order of the Circuit Court of Ohio County granting summary judgment to defendants-appellees State Farm Mutual Automobile Insurance Company ("State Farm"), Charles Noffsinger, and Erie Insurance Property and Casualty Company ("Erie"). The circuit court determined that the bad faith and intentional tort claims asserted by plaintiffs in the instant case, which are predicated upon defendants' alleged misconduct in making settlement under first-party underinsurance coverage, were barred by *res judicata* or claim preclusion in that during the course of a previous personal injury action plaintiffs had sought consequential damages against such insurers under *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994), but were denied relief by way of a final judgment. We now reverse, finding that plaintiffs' present claims are not barred under the "same-evidence" test for claim preclusion that applies in this jurisdiction.

## I.

### BACKGROUND

Diana Slider was injured on October 5, 1992 while riding as a passenger in a pickup truck owned and driven by Nancy Jo Haught. The vehicle had come to a stop on Route 18 near Middlebourne, West Virginia, while Mrs. Haught was attempting to make a left-hand turn, and was struck from behind by a loaded log truck driven by Paul Buck. Mrs. Slider was transported by ambulance to Wetzel County Hospital, where she was treated for various injuries including a concussion and scalp lacerations. Following her discharge from the hospital, Mrs. Slider complained of pain in the shoulders, neck and back, as well as persistent headaches and lightheadedness, and after seeking further medical treatment was diagnosed with several maladies including fibromyalgia, myofascial pain syndrome, headache disorder, and temporomandibular joint (TMJ) disfunction.

Howard Buck, the owner of the log truck, was insured by State Farm with a bodily injury liability coverage limit of $50,000.

The driver, Paul Buck, had $100,000 in liability coverage from Nationwide Mutual Insurance Company ("Nationwide"). Mrs. Slider also had first-party coverage under the underinsured motorist ("UIM") provisions of both her own policy with State Farm, as well as Mrs. Haught's policy with Erie, each of which provided UIM coverage in the amount of $100,000.

Demands were later made on both State Farm and Nationwide, with State Farm responding on October 25, 1992 by offering the full $50,000 available under Howard Buck's bodily injury liability coverage. Nationwide apparently made no offer, and as a result the Sliders in September 1994 commenced a personal injury action against Howard and Paul Buck in the Circuit Court of Tyler County. The Sliders served a copy of the complaint on both Erie and State Farm pursuant to W. Va.Code § 33–6–31(d) (1998).

Nationwide chose not to offer the full policy limit of Paul Buck's bodily injury liability coverage, but instead tendered an offer of only $70,000. The Sliders refused this offer, and the case went to trial on September 10, 1996. Neither Erie nor State Farm apparently made any offers of settlement either prior to or during trial. The jury subsequently returned a verdict in favor of the Sliders in the amount of $336,000. All three insurers paid their share of the verdict shortly after trial, and on November 21, 1996, the circuit court entered a judgment order and an order showing satisfaction of such judgment on the underlying personal injury claims.

The Sliders had previously filed a motion for summary judgment against Erie and State Farm on November 13, 1996, seeking recovery of attorneys' fees, costs and expenses, together with annoyance and inconvenience damages, on the basis that they had "substantially prevailed" under *Marshall v. Saseen*, 192 W.Va. 94, 450 S.E.2d 791 (1994). Erie and State Farm filed a joint cross-motion for summary judgment regarding the plaintiffs' *Marshall* claims on January 9, 1997. Following a hearing on these motions held on November 12, 1997,[1] the Circuit Court of Tyler County on January 9, 1998 denied the Sliders' motion for summary judgment and entered judgment in favor of Erie and State Farm. The circuit court's two-page order merely stated that, "Upon a review of the pleadings filed herein and argument of counsel, the Court finds that the Defendants, Erie Insurance Company and State Farm Mutual Automobile Insurance Company, are entitled to a summary judgment as a matter of law," and otherwise contained no supporting analysis. The Sliders' subsequent appeal to this Court was denied on July 1, 1998.

Undeterred, the Sliders on September 11, 1998 commenced the present action in the Circuit Court of Ohio County against all three insurers, as well as an employee of State Farm, Charles Noffsinger, asserting claims of (1) breach of the implied covenant of good faith and fair dealing (as to Erie and State Farm only)[2]; (2) unfair claim settlement practices under the West Virginia Unfair Claims Settlement Practices Act, W. Va. Code § 33–11–4(9) (1985); and (3) intentional infliction of emotional distress. The com-

---

1. Following the November 12 hearing, the Sliders presented a supplemental memorandum intended to demonstrate that Erie and State Farm had been actively involved in defending the underlying personal injury action. Among other evidence presented was the fact that Nationwide, Erie, and State Farm had entered into a joint defense agreement approximately six months before trial, whereby the parties agreed, *inter alia* that Nationwide's liability coverage was primary in the litigation, that Erie's UIM coverage was second in line, and that State Farm's UIM coverage was last in order. The purpose of this filing was to bolster the Sliders' *Marshall* claim, and was apparently prompted by concerns expressed by the circuit court over whether Erie and State Farm could be held liable for damages resulting from their failure to settle notwithstanding Nationwide's refusal to meet demands made by the Sliders.

2. This claim includes an allegation that Erie and State Farm acted "intentionally, willfully, maliciously, and in wanton disregard of the duties imposed by the common and statutory law of West Virginia as well as the rules and regulations thereunder." We presume that these attendant allegations are intended to support the Sliders' request for punitive damages, as there is no attempt in this case to recover an excess judgment. *See Marshall*, 192 W.Va. at 100–102, 450 S.E.2d at 797–99 (permitting insured to obtain amount of excess judgment when first-party underinsurance carrier acts in bad faith).

plaint further alleges that all four defendants were subject to a joint enterprise theory of liability, and seeks both compensatory and punitive damages.

Erie, State Farm, and Noffsinger subsequently moved for judgment on the pleadings and/or summary judgment asserting, *inter alia*, that the Sliders' claims as to them were barred under principles of *res judicata* or claim preclusion based upon the previous failure of plaintiffs' *Marshall* claims in the underlying personal injury litigation. The Circuit Court of Ohio County subsequently granted summary judgment in favor of the moving defendants on such ground by an order entered on September 8, 2000, and the present appeal followed.

## II.

## STANDARD OF REVIEW

■ "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). As we have long stressed, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963); *see also Painter*, 192 W.Va. at 192, 451 S.E.2d at 758.

## III.

## DISCUSSION

■ As this Court previously explained, *res judicata* or claim preclusion "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *State v. Miller*, 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (1995) (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308, 313 (1980); *In re Estate of McIntosh*, 144 W.Va. 583, 109 S.E.2d 153 (1959)).

The fundamental rationale for this doctrine is to permit repose on the part of defendants who have been subject to suit. *See Sattler v. Bailey*, 184 W.Va. 212, 217, 400 S.E.2d 220, 225 (1990) (observing that doctrine permits litigants to avoid "the expense and vexation attending relitigation of causes of action which have been fully and fairly decided"); *State ex rel. Connellsville By–Product Coal Co. v. Continental Coal Co.*, 117 W.Va. 447, 449, 186 S.E. 119, 120 (1936) (doctrine intended to prevent a person from being "twice vexed for one and the same cause"), *overruling on other grounds recognized, State ex rel. Morris v. Taylor*, 130 W.Va. 573, 44 S.E.2d 632 (1947). We have further observed that claim preclusion serves to " 'conserve[ ] judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.' " *Conley v. Spillers*, 171 W.Va. 584, 588, 301 S.E.2d 216, 220 (1983) (quoting *Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210, 217 (1979)).

■ The basic requirements for invoking *res judicata* or claim preclusion were recently summarized in *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997):

> Before the prosecution of a lawsuit may be barred on the basis of *res judicata*, three elements must be satisfied. First, there must have been a final adjudication on the merits in the prior action by a court having jurisdiction of the proceedings. Second, the two actions must involve either the same parties or persons in privity with those same parties. Third, the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action.

Syl. pt. 4, *id.* The third prong of this test is most often the focal point, since "the central inquiry on a plea of *res judicata* is whether the cause of action in the second suit is the same as in the first suit." *Conley*, 171 W.Va. at 588, 301 S.E.2d at 220. This case is no different.

■ The threat of claim preclusion requires that litigants present in a single action

all claims or defenses that may appropriately be resolved within the confines of such proceeding, since

> [a]n adjudication by a court having jurisdiction of the subject-matter and the parties is final and conclusive, not only as to the matters actually determined, *but as to every other matter which the parties might have litigated as incident thereto and coming within the legitimate purview of the subject-matter of the action.* It is not essential that the matter should have been formally put in issue in a former suit, but it is sufficient that the status of the suit was such that the parties might have had the matter disposed of on its merits. An erroneous ruling of the court will not prevent the matter from being *res judicata.*

Syl. pt. 1, *Sayre's Adm'r v. Harpold,* 33 W.Va. 553, 11 S.E. 16 (1890) (emphasis added); *see also* syl. pt. 1, *In re Estate of McIntosh, supra.* As we explained in *Blake,* "*res judicata* may operate to bar a subsequent proceeding even if the precise cause of action involved was not actually litigated in the former proceeding so long as the claim could have been raised and determined." 201 W.Va. at 477, 498 S.E.2d at 49. Claim preclusion therefore functions as a rule governing the joinder of claims and defenses, since a party's failure to present a particular issue in the course of litigation may preclude its determination in a subsequent action.

■ Erie and State Farm argue in this case that "where the same facts *and transactions* giving rise to the first suit serve as the basis for the second suit, the second suit is barred by the doctrine of res judicata, even though the second suit attempts to assert different legal theories of recovery." (Emphasis added). We note, however, that this Court has not adopted a transaction-focused test for determining whether successive proceedings involve the same claim or cause of action. *See, e.g., Restatement (Second) of Judgments* § 24(a) (1982) (taking the position that judgment in an action extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose"). Rather, in *White v. SWCC,* 164 W.Va. 284, 290, 262 S.E.2d 752, 756 (1980), we embraced the "same-evidence" approach for determining whether two claims should be deemed to be the same for purposes of claim preclusion:

> For purposes of res judicata, "a cause of action" is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief. . . . The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues. . . . If the two cases require substantially different evidence to sustain them, the second cannot be said to be the same cause of action and barred by res judicata.

*Id.* at 290, 262 S.E.2d at 756 (citations omitted); *see also Blake,* 201 W.Va. at 476, 498 S.E.2d at 48.

■ Applying this test to the present case, it is clear that the Sliders' present claims are not barred by *res judicata* or claim preclusion. In *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994), we extended our holding in *Hayseeds, Inc. v. State Farm Fire & Casualty,* 177 W.Va. 323, 352 S.E.2d 73 (1986), to permit a policyholder to obtain consequential damages from an uninsured or underinsured motorist carrier upon a showing that the policyholder had substantially prevailed in a dispute with the insurer. Specifically, we held in syllabus point six of *Marshall* that,

> When a policyholder of uninsured or underinsured motorist coverage issued pursuant to W. Va.Code, 33–6–31(b) substantially prevails in a suit involving such coverage under W. Va.Code, 33–6–31(d), the insurer issuing such policy is liable for the amount recovered up to the policy limits, the policyholder's reasonable attorney fees, and damages proven for aggravation and inconvenience.

In defining what it means to "substantially prevail" in the *Hayseeds* context, we had previously explained that,

> [a]n insured "substantially prevails" in a property damage action against his or her insurer when the action is settled for an amount equal to or approximating the

amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount. In either of these situations the insured is entitled to recover reasonable attorney's fees from his or her insurer, as long as the attorney's services were necessary to obtain payment of the insurance proceeds.

Syl. pt. 1, *Jordan v. National Grange Mut. Ins. Co.*, 183 W.Va. 9, 393 S.E.2d 647 (1990). We recently modified this standard for determining whether a policyholder has substantially prevailed, as stated in syllabus point four of *Miller v. Fluharty*, 201 W.Va. 685, 500 S.E.2d 310 (1997):

When examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. The insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract, and therefore, whether the insurance carrier is liable for the policyholder's consequential damages under *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986) and its progeny.

While this Court in *Fluharty* expanded the range of evidence that is relevant to a determination of whether a policyholder has substantially prevailed in a dispute with an insurer, we have not retreated from our original position that a policyholder is not required to prove bad faith or other misconduct to recover consequential damages under *Hayseeds:*

[W]e consider it of little importance whether an insurer contests an insured's claim in good or bad faith. In either case, the insured is out his consequential damages and attorney's fees. To impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.

177 W.Va. at 329, 352 S.E.2d at 79–80; *see also McCormick v. Allstate Ins. Co.*, 197 W.Va. 415, 422, 475 S.E.2d 507, 514 (1996) ("To recover attorney fees and net economic loss damages and damages for aggravation and inconvenience under [*Hayseeds* and its progeny], it is not necessary that a plaintiff show bad faith".)

The Sliders' substantive claims, as set forth in the first three counts of their complaint in the present action, are based upon allegations that the defendant insurers (1) breached their common-law duty of good faith and fair dealing by acting willfully, maliciously and intentionally denying their claims for underinsurance coverage; (2) violated the West Virginia Unfair Claims Settlement Practices Act, W. Va.Code § 33–11–4(9); and (3) engaged in extreme and outrageous conduct that was intended to cause emotional distress. In contrast to their previous *Marshall* claim, which was necessarily limited to the issue of whether they had substantially prevailed in the underlying personal injury action,[3] the Sliders' present causes of action all involve allegations of bad faith or other affirmative misconduct on the part of defendants Erie and State Farm.

---

**3.** In presenting their *Marshall* claim before the Tyler County Circuit Court, the Sliders made certain assertions regarding the roles that Erie and State Farm undertook during the underlying personal injury litigation, *see* note 1, *supra*, which averments now form part of the basis for the instant action. Erie and State Farm argue that such argument was "interposed [in the previous action] solely to demonstrate bad faith by 'active participation' in litigation conduct which is exactly the subject of the current claim." We do not read these arguments so broadly as to conclude that the Sliders were asserting in the Tyler County litigation that the insurers were

acting in bad faith or otherwise engaging in wrongful conduct; rather, it appears that such argument was merely intended to show that Erie and State Farm had some control over the defense of the underlying personal injury claim. Indeed, we expressly approved of such an arrangement in syllabus point nine, in part, of *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993), *cert. denied*, 510 U.S. 1194, 114 S.Ct. 1302, 127 L.Ed.2d 653 (1994), where we stated that "[a] liability carrier and an underinsured motorist carrier may agree to jointly defend an action by having their respective attorneys participate together in the defense."

In *McCormick*, we expressly distinguished a *Hayseeds*-type claim from a suit brought under the implied right of action created by § 33–11–4(9), which this Court had previously recognized in *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W.Va. 597, 280 S.E.2d 252 (1981)[4]:

> The conditions and predicate for bringing a case under *Jenkins v. J.C. Penney Casualty Insurance Company*, 167 W.Va. 597, 280 S.E.2d 252 (1981), are wholly different from those necessary for bringing an underlying contract action or for bringing an action under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 177 W.Va. 323, 352 S.E.2d 73 (1986). Whereas under *Hayseeds* it is necessary that a policyholder substantially prevail on an underlying contract action before he may recover enhanced damages, under *Jenkins* there is no requirement that one substantially prevail; it is required that liability and damages be settled previously or in the course of the *Jenkins* litigation. *Jenkins* instead predicates entitlement to relief solely upon violation of the West Virginia Unfair Trade Practices Act, W. Va.Code § 33–11–4(9), where such violation arises from a "general business practice" on the part of the insurer.

Syl. pt. 9, *McCormick*.

 Given the fact that the nature of the evidence required to prevail on their present bad faith and intentional tort claims differs substantially from that which was necessary to prevail under the previous *Marshall* claim, we conclude that the lower court erred in concluding that the Sliders' were barred by principles of *res judicata* or claim preclusion from going forward with the instant action. The Court therefore holds that where an insured has previously brought a claim for consequential damages under *Marshall* and a final judgment has been entered with respect to such claim, the insured is not thereby precluded under principles of *res judicata* or claim preclusion from bringing a subsequent action asserting causes of action predicated upon a defendant insurer's alleged bad faith or other intentional misconduct in the course of settling the insured's policy claim.[5]

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Ohio County is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

4. *Overruled on other grounds, State ex rel. State Farm Fire & Cas. Co. v. Madden*, 192 W.Va. 155, 451 S.E.2d 721 (1994).

5. State Farm and Erie also present a number of additional arguments in support of the circuit court's grant of summary judgment, which are unrelated to the issue of whether the Sliders' claims are barred by claim preclusion. Although this Court has previously indicated that "[w]e are not wed ... to the lower court's rationale, but may rule on any alternate ground manifest in the record," *Conrad v. ARA Szabo*, 198 W.Va. 362, 369, 480 S.E.2d 801, 808 (1996), we have more recently cautioned that "[a]lthough our standard of review for summary judgment remains *de novo*, a circuit court's order granting summary judgment must set out factual findings sufficient to permit meaningful appellate review," syl. pt. 3, in part, *Fayette County Nat. Bank v. Lilly*, 199 W.Va. 349, 484 S.E.2d 232 (1997). Since the lower court did not address these alternative arguments below, we refrain from deciding them in this appeal. *See Bass v. Coltelli–Rose*, 207 W.Va. 730, 732 n. 2, 536 S.E.2d 494, 496 n. 2 (2000) (per curiam) (declining to undertake review of grounds for summary judgment not addressed by trial court in its final order).