No. 20-0325 – *In re Petition of Mario Perito II for Expungement of Record*

WOOTON, J., dissenting:

In this opinion, a majority of the Court concludes that an individual who sought expungement of his criminal record *before* the Legislature enacted a statute authorizing the relief requested, and whose petition was denied for want of that authority, is forever barred from seeking expungement of his criminal record by operation of the doctrine of res judicata. I believe the majority's analysis is flawed in two respects: (1) it fundamentally errs in concluding that there was final adjudication on the merits with regard to Mr. Perito's 1997 petition for expungement; and (2) it mistakenly concludes that the equitable cause of action upon which Mr. Perito relied in his 1997 petition is identical to the statutory cause of action upon which he relied in his 2019 petition. For these reasons, I respectfully dissent.

First, the majority relies exclusively upon the circuit court's finding in its 1999 order that the petition "relates to felony convictions which occurred after a jury trial [and] that the victim of the offense objected to said petition" to determine there was a final adjudication on the merits below. I cannot fathom how this conclusion was reached. The majority does not explain how the selected quotation — an incomplete one at that — expresses any determination whatsoever on the merits of expungement. Rather, if one were to examine that quote in its entirety, the words singled out by the majority are nothing more

1

than a recitation of the facts of the underlying proceedings. In full, the circuit court stated in its 1999 order:

> Thereupon, upon mature consideration, the [c]ourt does find that the petition is not supported by any statutory case [sic] law, that the petition relates to felony convictions which occurred after a jury trial, that the victim of the offense objected to said petition, and the [c]ourt does therefore deny the relief granted [sic] and does ADJUDGE and ORDER that the petition be denied, that this matter be stricken from the active docket of this [c]ourt and the [c]ourt did note the petitioner's exception to its adverse rulings.

The first part of that sentence clearly explains that the circuit court found it has no statutory authority upon which to grant the petition, and the transcript of the 1997 hearing preceding this order indicates that the circuit court refused to exercise its inherent authority to decide Mr. Perito's petition; accordingly, the court having conceded that it had no authority upon which to grant or deny the petition, its alleged reasoning for thereafter denying the petition was of no moment — it was dicta, no more and no less. It is abundantly clear, when examining the circuit court's ruling in context, that its denial of Mr. Perito's 1997 petition was predicated solely on its lack of authority to grant him relief, and not upon the merits of his petition.

Beyond this, even assuming, arguendo, that the circuit court believed it had the authority to rule upon the petition in 1999 but declined to exercise it, the majority fails to explain how these two findings constitute an adjudication on the merits. The fact that the petition "relates to felony convictions which occurred after a jury trial" is not a basis upon which to deny a petition for expungement. We have never found that to be the case,

2

and logic dictates that we would be unlikely to do so. If every conviction resulting from a jury's verdict were ineligible, a host of convictions in this state would be ineligible for expungement. This is not a basis for denying the petition; it is simply a recitation of the facts predicating the petition. To construe that language otherwise is both logically and legally unsound.

The same can be said of the circuit court's finding in the 1999 order that "the victim objected to said petition." Obviously, the court at that time could have considered the victim's objection in determining whether to grant or deny the petition for expungement. However, to do so without considering any other evidence would, in my view, have been a flagrant abuse of discretion, given the circuit court's failure to permit Mr. Perito to proffer any evidence which might have established that he was otherwise deserving of an expungement. Again, a review of the 1997 hearing transcript reveals that the circuit court heard virtually no evidence in this matter. The victim's objection amounted to two sentences, and the entirety of Mr. Perito's evidence consisted of a bare recitation by his attorney of what was alleged in his petition. Moreover, upon hearing the victim's objection, the circuit court in 1997 openly stated, "I am not going to reach the issue as to whether I have the authority to [grant the petition] or not because I am not going to grant it[] if the victim objects." Ignoring for the moment that the circuit court simply refused to determine whether it could even entertain the petition for expungement, the court made clear that no matter what evidence Mr. Perito proffered, it would still deny the petition, simply because the victim objected. Surely a hard-and-fast rule by which the

3

victim's objection trumps any evidence brought forward by the petitioner cannot be deemed the exercise of sound discretion on the part of the circuit court in resolving a petition for expungement. Yet, if we are to conclude that the circuit court issued a final adjudication on the merits in this matter, we are implicitly sanctioning that conduct, because that is precisely what the circuit court — by its own admission — did in 1999.

The problems do not end here. The majority goes on to discuss whether the circuit court could have properly exercised jurisdiction over the 1997 petition, citing precedents indicating that courts have an inherent authority to grant expungements. *See In re A.N.T.*, 238 W. Va. 701, 704, 798 S.E.2d 623, 626 (2017) ("There are two bases for judicial expungement of criminal records: statutory authority and the inherent power of the courts."). I do not dispute that this Court has long recognized such an inherent power; however, the majority fails to appreciate—or perhaps just ignores—how very limited that authority is. For example, we have explicitly held that

> [a] circuit court, ***absent extraordinary circumstances and to protect constitutional rights or some other compelling public policy imperative***, does not in the absence of statutory authority have the power to order the expungement of criminal history record information regarding a valid criminal conviction maintained by the State Police Criminal Investigation Bureau pursuant to W. Va. Code, 15-2-24 [1977].

Syl. Pt. 1, *State ex rel. Barrick v. Stone*, 201 W. Va. 569, 499 S.E.2d 298 (1997) (emphasis added).[1] This language clearly and explicitly limits courts' inherent authority to grant

---

[1] This holding is still valid insofar as persons convicted of certain crimes are not eligible to petition for an expungement of their criminal record. *See* W. Va. Code § 5-1-

4

expungements to cases involving the rarest of circumstances. The law review article cited by the majority — Valena E. Beety, Judge Michael Aloi, Evan Johns, *Emergence from Civil Death: The Evolution of Expungement in West Virginia*, 117 W. Va. L. Rev. Online 63 (May 19, 2015) — clearly supports this interpretation, relying on the *Handbook on West Virginia Criminal Procedure* authored by eminent scholar and former West Virginia Supreme Court Justice Franklin Cleckley. To be sure, Justice Cleckley recognized that our courts have jurisdiction in equity to order an expungement "in an appropriate case." 1 Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* I-186 (2d. ed. 1993) (citing *United States v. Van Wagner*, 746 F. Supp. 619 (E.D. Va. 1990)). However, Justice Cleckley acknowledged that such cases were confined to "exceptional circumstances" like "flagrant violations of the Constitution" or malicious prosecutions. *Id.* (quoting *United States v. Doe*, 556 F.2d 391 (6th Cir. 1977); citing *Wheeler v. Goodman*, 306 F. Supp. 58 (W.D.N.C. 1969)). There is no suggestion that any such exceptional circumstance was present in this case.

To the extent that Justice Cleckley also acknowledged that courts may consider "economic hardship" accompanying a criminal record in considering whether expungement is appropriate, that consideration necessarily implies that the circuit court must take evidence regarding the existence of such a hardship. *Id*. (citing *Van Wagner*,

---

16a(e) (2018) (excepting from expungement eligibility first-degree murder, treason, kidnapping, and certain other felonies).

746 F. Supp. at 619). That was not done in this case. Again, a cursory examination of the 1997 hearing transcript reveals the circuit court did nothing more than hear Mr. Perito's attorney briefly regurgitate the allegation in the petition that Mr. Perito was finding it difficult to become employed, given his criminal record. Significantly, other than that brief recitation, nothing – and in particular, no evidence – was presented to the circuit court at that time. The court did not entertain a single specific explanation as to how Mr. Perito's criminal record was impacting his employment or his economic status. While the economic impact of a criminal record may be obvious without the need to take evidence, that does not excuse the court's failure to do so — particularly when that failure was based on a preconceived determination that an expungement would not be granted simply because the victim objected.

Simply put, the circuit court entertained no evidence that would have led it to conclude that an "exceptional circumstance" allowed it to exercise its inherent authority to grant or deny Mr. Perito's 1997 petition for expungement. Accordingly, the only remaining avenue under which it could have entertained the petition was if there existed some statutory authority to do so. As it observed in its 1999 order, the circuit court had no

statutory authority upon which to grant or deny the petition. In the absence of both inherent or statutory authority, the circuit court could not rule on the 1997 petition.[2]

Moreover, even assuming the circuit court exercised its inherent authority in this matter in 1997, I firmly believe that the equitable cause of action undergirding the 1997 petition is separate and distinct from the statutory cause of action upon which the 2019 petition was based. This is so because the statutory cause of action entitles the petitioner to something new: a "good cause" hearing. West Virginia Code § 5-1-16a (2018) provides, in relevant part,

> Any person who has received a full and unconditional pardon from the Governor, pursuant to the provisions of section eleven, article VII of the Constitution of West Virginia and section sixteen [§ 5-1-16] of this article, may petition the circuit court in the county where the conviction was had to have the record of such conviction expunged. . . .The circuit court, upon verification of the act of pardon ***and after a hearing to determine that good cause exists***, may enter an order directing that all public record of the petitioner's conviction be expunged.

(Emphasis added). Persons seeking an expungement pursuant to the court's inherit authority do not have a statutorily created right to a good cause hearing.

The majority acknowledges that "[t]he test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence

---

[2] The lack of authority explains why there was not a full hearing on the issue of Mr. Perito's petition for expungement and why there could not have been any decision on the merits because there was nothing to adjudicate.

would support both actions or issues." *White v. SWCC*, 164 W. Va. 284, 290, 262 S.E.2d 752, 756 (1980) (citations omitted). In Mr. Perito's case, the majority highlights that both of Mr. Perito's expungement petitions contained nearly identical allegations, specifically details of his convictions, sentence, and pardon, and an assertion that he has been leading a law-abiding life and that the convictions "seriously affected his employment opportunities." This is undisputed. However, I believe the statute confers upon Mr. Perito, and those similarly situated, an explicit right to present evidence to the circuit court in a hearing specifically tailored to determine whether good cause exists to grant the expungement. Before the enactment of this statute there was no such right; the hearing held in 1997 serves as a prime example of why such a hearing is now guaranteed. Mr. Perito was allowed to recite the facts alleged in his petition, but he was given no opportunity to elaborate upon them or present evidence to the court establishing the details of his "law-abiding" life, or how his convictions detrimentally impacted his economic or employment prospects. From a purely objective standpoint, there is no way to construe the 1997 hearing as the "good cause" hearing contemplated by West Virginia Code § 5-1-16a; therefore, to the extent that the statute entitles Mr. Perito to such a hearing, the statutory cause of action differs significantly, and thus avoids the preclusive effect of res judicata.

In this regard, I would also point out this Court's long-standing precedent establishing that "'[t]he doctrine of *res judicata* does not prevent a re-examination of the same question between the same parties when, subsequent to the judgment, facts have arisen which may alter the rights of the litigants.' Syllabus, *Huntington Brick & Tile Co. v.*

8

*Public Service Commission*, 107 W. Va. 569, 149 S.E. 677 (1929)." Syllabus Point 2, *Blethlen v. West Virginia Dept. of Revenue/State Tax Dept.*, 219 W. Va. 402, 633 S.E.2d 531 (2006). Given this holding, the majority cannot reasonably contend that the passage of West Virginia Code § 5-1-16a (1999), insofar it confers a statutory right to a good cause hearing upon persons seeking expungements, does not "alter the rights of the litigants" in such a way that res judicata is overcome. While the majority takes great pains to argue that this Court has never recognized an intervening law exception to the doctrine of res judicata, it is disingenuous to make that argument where the Legislature — possibly frustrated with the judiciary's reluctance to grant expungements under its so-called inherent authority — passed a statute explicitly designed to give petitioners that relief.

In a similar vein, there are facts *specific to this case* which may affect the rights of the parties insofar as they may arguably establish that Mr. Perito is deserving of expungement. Had Mr. Perito been given the opportunity to testify or present evidence in 1997 regarding his allegedly law-abiding life or how his convictions had detrimentally impacted his life, such evidence and testimony would have been necessarily limited to events that took place prior to the hearing. By the time of his second petition in 2019, twenty-two years had passed. It stands to reason that the evidence he likely would have presented in 2019 would have greatly differed — or at least been far more substantial — than that he could have presented in 1997. To determine that the evidence presented would have been identical ignores the reality that more than *two decades* have passed between the filing of these petitions, in which time Mr. Perito may have been able to more clearly

9

demonstrate that he led a law-abiding life and how his convictions harmed his employment prospects. Yet, the 2019 circuit court refused to take any evidence upon finding — I believe incorrectly — that res judicata barred the 2019 petition for expungement.

As a final point, I take this opportunity to highlight a fact the majority seems keen to overlook. During the 1997 hearing on Mr. Perito's first expungement petition, after determining that it would not grant the petition the circuit court stated to Mr. Perito, "You may, if you wish, explore whatever there is, any body of law between pardons and expungement and bring it on again." In this regard, the Restatement (Second) of Judgments § 26(1)(b) (Am. L. Inst. 1982) recognizes that there is an exception to the doctrine of res judicata where "[t]he court in the first action expressly reserved the plaintiff's right to maintain the second action[.]" *Id*. While this Court has not yet-adopted this language in an opinion, even a cursory review of our precedents reveals that we have often looked to the Restatements and accepted them as persuasive authority. Why, then, would we decline to do so in the case at bar? Given the circuit court's on-the-record statement that it would permit Mr. Perito to bring his petition again if he discovered authority permitting the court to entertain his expungement petition, this case presents a clear-cut opportunity to apply this very exception to the doctrine of res judicata.

For the foregoing reasons, I believe the majority's opinion in this matter not only wrongly interprets the facts of this case but also resolves the legal issue in a manner inconsistent with the law. That said, I do not opine as to whether Mr. Perito's petition for

10

expungement should be granted, as that is a matter that would lay squarely within the discretion of the circuit court. Rather, this opinion is meant only to illustrate that Mr. Perito was denied the process guaranteed to him by West Virginia Code § 5-1-16a insofar as he never received a "good cause" hearing. Therefore, I respectfully dissent.